No. 3587

Second Circuit

JEFFERSON ET AL. v. KING

(November 18, 1929.   Opinion and Decree.)
(December 3, 1929.   Rehearing Refused.)
(February 3, 1930. Writ of Review Refused
by Supreme Court.)

A. S. Drew, of Minden, attorney for plaintiffs, appellees.

Wilkinson, Lewis, Wilkinson & Buford, and Roberts & Naff, of Shreveport, attorneys for defendant, appellant.

ODOM, J.   On the night of November 9, 1928, Cleveland Jefferson, husband of Mrs. Joanna Jefferson and father of two minor children, was riding on a motortruck belonging to the defendant and driven by his chauffeur, Jim Shine, which truck collided with another truck parked on the side of the road, and, in the collision, Cleveland Jefferson sustained injuries from which he died.

This suit was brought by the widow, individually, and in her capacity as tutrix of her minor children, to recover damages resulting from the death. As a cause of action, plaintiff alleges that the accident in which deceased was injured was due solely to the gross fault and negligence of defendant's chauffeur, and that the negligence of the chauffeur must, as a matter of law, be imputed to his employer, King; that the chauffeur, who was the employee and agent of defendant, while acting within the course and scope of his employment, invited the deceased to ride on the truck which invitation placed deceased in the category of an invited guest of the defendant and that as such he was entitled to reasonable and ordinary care for his safety and protection.

The defense is twofold: First, that the deceased was riding on his truck without his knowledge or consent, and that his chauffeur had no authority, express or implied, to invite him to ride, and therefore deceased was not his invitee or guest on the truck, but as to him, was a trespasser; and second, in the alternative, in case the court should hold that deceased was a licensee or a guest on the truck, plaintiff cannot recover because deceased was himself grossly negligent in remaining on the truck after he became aware of the negligent manner in which the chauffeur was handling it, which negligence bars recovery, and therefore, that the deceased assumed all risks.

There was judgment in the lower court against defendant and he has appealed.

## OPINION

Under Art. 2315 of the Civil Code, "Every act whatever of man that causes damage to another obliges him by whose fault it happened, to repair it;" and under article 2320, "Masters and employers are answerable for the damage occasioned by their servants and overseers in the exercise of the functions in which they are employed." It is asserted by plaintiff, and not denied by defendant, that the chauffeur, Jim Shine, was negligent in driving the truck and that the accident was due to his negligence.

This being conceded, the primary question to be determined is whether plaintiffs, under the circumstances of this case, are entitled, to invoke the rule "respondeat superior," for it has been held that the ordinary rule of master and servant is to be applied to the relation of chauffeur and owner of an automobile. Valley vs. Clay, 151 La. 710, 92 So. 308. If it be held that these plaintiffs are not entitled to invoke that rule, their suit falls, of course.

The facts are that defendant is a wholesale merchant, his establishment being at Minden. He uses motortrucks to deliver freight to retailers in neighboring towns. Jim Shine, a colored man, was his chauffeur in charge of one of his trucks. While Shine was in Spring Hill on a mission for his employer, the deceased, Cleveland Jefferson, another colored man, asked the chauffeur's permission to ride on the truck back to Minden which was granted. On reaching Minden, the chauffeur drove to defendant's place of business, the deceased riding with him; the chauffeur, with the help of deceased, it seems, reloaded the truck with freight to be delivered at Cotton Valley. When the truck was reloaded and the chauffeur was ready to start on his journey, he suggested to the deceased that he ride with him to Cotton Valley, and deceased thereupon accepted the invitation. The chauffeur says that deceased was then without a home

and was looking for a place to live. The invitation was extended as a courtesy and accommodation to deceased, and not for the purpose of getting assistance in hauling the freight. It is not shown whether the chauffeur invited deceased to ride back to Minden, but presumably he did; at any rate, it is conceded that deceased had the chauffeur's permission to ride. The two started back to Minden on the truck, deceased riding by the chauffeur's side in the cab. It was about night when they started and was raining. The truck had only one light and it was dim, the windshield became wet and smeared, and the brakes were poor after they got wet. But the accident was not caused by the faulty condition of the lights, brakes, or windshield, but was due to the fact that the chauffeur was tired and sleepy, and, as a result of that physical condition, he temporarily "dozed off," or lost consciousness between the time he first saw the parked truck ahead of him and the time he reached it. The chauffeur says that he saw the truck on the right-hand side of the road, which was straight, when about 100 yards from it; that he thought at the time it was moving in the direction in which he was going, but it happened to be standing still. He says that he did not notice the parked truck from the time he first saw it until he was within a few feet of it, when he attempted to swerve around it. He testified that he did not know why he did not again notice the truck, but thinks he must have temporarily dozed off and lost consciousness. The road was more than 20 feet wide at that place and there was ample room for the chauffeur to drive around the parked truck.

The inference is that the chauffeur, seeing the tail-light of the truck ahead of him, 100 yards away, and believing the truck to be moving forward, thought he would not reach it as soon as he did and for a few moments ceased vigilance. When he again looked, he was so close upon the parked vehicle that he could not avoid the collision.

It is made clear that the defendant was away from home when the accident occurred and knew nothing of it until his return, and that his chauffeur did not have his permission to pick up and carry strangers on the truck, either on this or any other occasion. The chauffeur was asked:

"Q. Did you have any right to pick up this man?

"A. No, sir.

"Q. Was he doing anything in connection with your business?

"A. No, sir.

"Q. You just went out of your way when he asked you to ride—you let him ride?

"A. Yes, sir."

Counsel for plaintiffs earnestly insists that under these circumstances it must be held that deceased was defendant's guest on the truck, or at least a licensee. We do not think he was either. The defendant did not personally invite him to ride, nor did he license or permit him to do so, and the fact that the chauffeur was employed to operate the truck to deliver freight gave him no right to either invite or permit strangers to ride upon it. He was employed to have charge of and operate the truck for the sole purpose of delivering freight. In all matters pertaining to the use of the truck in the delivering of freight he was, as to the public, the agent and servant of the master, and for any damage done another through his fault, arising as an incident to his duties in connection with the delivery of freight, the master would have been responsible.

But, when the chauffeur invited or permitted deceased to ride on his master's vehicle, which was destined to haul freight and not passengers, he went beyond the scope of his employment. "A servant is acting within the scope of his employment when he is engaged in doing for his master what he has been directed to do." Any act of a servant which can be reasonably and fairly said to be a natural incident to the employment, or logically and naturally connected therewith, is within the scope of the employment. But when an employee turns aside and does some act in no way incidental to or connected with his employment, such act does not bind the master. By the nature of his employment, the chauffeur was authorized to operate the truck on the streets and highways for the moving of freight and, while so engaged in that business, was, as to the general public, the agent and servant of the master. But, when he extended the invitation or permit to deceased to ride on the truck, he was not pursuing any business of his employer; his act in doing so being an independent private purpose of his own. He was acting as his own master and not as the servant of defendant. Under such circumstances, it has been repeatedly held in other jurisdictions that there is no liability on the part of the master. We quote the following pertinent language from the case of Hughes et al. v. Murdoch Storage & Transfer Co., decided by the Supreme Court of Pennsylvania in 1920, reported in 269 Pa. 222, 112 A. 111:

"The test is, not that, when the invitation was given, he (the chauffeur) was engaged in * * * his master's business, but was the invitation or its consequence in furtherance of the master's business, so that it might be said to be impliedly within his authority? The master is bound by the acts of his servant in the course of his employment, but he is not bound by those outside of such employment. The servant (a truck driver) has no right to impose upon his master's onerous liability by holding him responsible for the safe carriage of any person he may see fit to accept as a passenger. Such persons, so invited or permitted to ride, should know of this obvious lack of authority from the position the man holds and the character of his employment."

In the case of O'Leary v. Fash, decided by the Supreme Court of Massachusetts in 1923, reported in 245 Mass 123, 140 N. E. 282, 283, the court said:

"It is an obvious consequence of the principal's conduct in hiring a man to drive a truck in the delivery of freight that the public have no right to infer and do not understand the principal to confer upon such driver the authority to transport guests. * * *

"The defendant owed no duty to the plaintiff. The latter was not on his truck by his invitation or by the invitation of any one authorized to act for him. * * * The driver from the beginning to the end of his relations with her was acting outside the scope of the authority conferred expressly or impliedly upon him by the defendant arising out of the employment. Hence the defendant is not responsible for his conduct. The driver was not the agent of the defendant in that particular. Of course, the driver was in charge of the defendant's truck, and as to the general public he was the agent of the defendant in driving it."

The following cases are in point: Tate v. Atlantic Ice & Coal Corporation, 25 Ga. App. 797, 104 S. E. 913; Waller v. Southern Ice & Coal Co., 144 Ga. 695, 87 S. E. 888; McQueen v. People's Store, 97 Wash. 387, 166 P. 626; Schulwitz v. Delta Lbr. Co., 126 Mich. 559, 85 N. W. 1075; Foster-Herbert Cut Stone Co. v. Pugh, 115 Tenn. 688, 91 S. W. 199, 4 L. R. A. (N. S.) 804, 112 Am. St. Rep. 881; Morris v. Fruit Co., 32 Ga. App. 788, 124 S. E. 807; Dougherty v.

Chicago, M. & St. P. Ry. Co., 137 Iowa, 257, 114 N. W. 902, 14 L. R. A. (N. S.) 590, 126 Am. St. Rep. 282.

In the case of Valley v. Clay, 151 La. 710, 92 So. 308, 309, the court uses this language: "In order to render the owner liable the chauffeur must have acted within the scope of his employment. Berry on Automobiles, 1032, 1085, 1092; Huddy on Automobiles, p. 809, Sec. 627. The maxim of 'respondeat superior' has been considered and applied by us in a number of cases, some of which are as follows: (Citing a long list of authorities)."

In the same case, the court said: "If the service be performed in an unlawful, or even a criminal manner, the master is liable, so long as the thing done forms a part of the servant's duties"—citing Nash v. Longville Lumber Co., 148 La. 943, 88 So. 226. See, also Tinker v. Hirst, 162 La. 209, 110 So. 324.

Counsel for appellee cites a long list of decisions from this and other jurisdictions in support of the proposition that one who invites or allows another to ride on his automobile owes to him the duty of using ordinary and reasonable care for his protection and safety. But those authorities are not in point here because the deceased, as we have shown, had no right to be on the truck, the chauffeur having no right to invite him or make him the defendant's guest, and therefore as to the defendant, King, was a trespasser on the truck.

In a supplemental brief, counsel says: "But conceding that he was on the truck as a trespasser, it must also be conceded that he was entitled to the rights of a trespasser."

The rule recognized in this state and elsewhere is that even though one be a trespasser upon the property of another the owner still owes to him the negative duty not to injure him by any willful or wanton act, conduct, or neglect. Whether that rule should be applied and enforced against the owner of a motor vehicle whose chauffeur without authority, express or implied, invites a passenger to ride and while so riding is injured, is questionable. Courts of last resort are not uniform in their holdings on that point. But conceding, without holding, that plaintiffs in this case are entitled to invoke that doctrine, the fact remains that the death of the deceased was not due to any wanton or willful act of the chauffeur. Counsel contends that to constitute willful or wanton negligence it is not necessary to show ill will towards the person injured; and that to make out a case of willful, wanton negligence, it is necessary only to show an entire absence of care for the life, person or property of another—a total and reckless indifference to consequences. Even so, we hold that no such case is made out here.

The chauffeur for the moment ceased to look ahead. That was due to the fact that he was overcome with fatigue. He thought the vehicle which he had seen on the side of the road ahead of him was moving forward, but was mistaken. When he again looked ahead, he was close upon it. He then did all that he could to avoid the collision, but it was too late. It cannot be said that this conduct evidences a reckless disregard for the safety of deceased; for the chauffeur was himself exposed to the same danger as was deceased. They were both riding on the same seat, and the fact that Jefferson was killed and not the chauffeur was a mere incident. The chauffeur was injured, but not seriously.

To constitute "wanton negligence," as that term is used by some of the

courts, the party doing the act or failing to act must be conscious of his conduct and, "without having the intent to injure, is conscious, from his knowledge of existing circumstances and conditions, that his conduct will naturally or probably result in injury." See Words and Phrases, First Series, vol. 8, p. 7385, and authorities cited.

Willful negligence has been said to be an "intentional failure to perform a manifest duty which is important to the person injured in preventing the injury." Words and Phrases, First Series, vol. 8, p. 7484.

For the reasons assigned, the judgment appealed from is reversed and avoided; and it is further ordered that plaintiffs' demands be rejected and their suit dismissed, at their costs.