## JOHNSON v. CONTINENTAL CAS-UALTY CO.

## HILBORN v. SAME.

### No. 5115.

Court of Appeal of Louisiana. Second Circuit.

Dec. 13, 1935.

Rehearing Granted Dec. 31, 1935.

C. F. Currier and Malcolm W. Feist, both of Shreveport, for appellants.

R. H. Lee, of Benton, and Malcolm E. Lafargue, of Shreveport, for appellees.

DREW, Judge.

These two cases are companion cases, being the outgrowth of an automobile accident which happened in Bossier parish on or about May 24, 1933. The cases were consolidated for trial and, for the sake of convenience, have been brought up to this court in the form of a single transcript.

On May 24, 1933, an automobile, driven by one J. W. Wilson and owned by W. H. Wilson, was proceeding due west on what was then known as the "Minden cut-off" road in Bossier parish. This was a concrete road leaving the Dixie-Overland highway at Blossom Heath and joining the Benton-Bossier City highway at right angles approximately two miles north of the intersection of the Dixie-Overland highway and the Benton-Bossier City highway. The "Minden cut-off" road is now a portion of the Dixie-Overland highway since the new Red River bridge has been opened for traffic, but at the time of the accident its westerly end as a concrete highway was its intersection with the Benton-Bossier City highway. Beyond that, and west of the Benton-Bossier City highway, it was a gravel road.

Seated beside the driver in the west-bound Wilson car, which was a Chevrolet coupé, was Jim Hilborn, plaintiff in one of these suits. As the car approached the intersection of the "Minden cut-off" road with the Benton-Bossier City highway, another Chevrolet coupé driven by Miss Kate Stafford Johnson, plaintiff in the other suit hereunder considered, and occupied by herself and mother, Mrs. Leila I. Johnson, was proceeding north on the Benton-Bossier City highway, and was likewise approaching the intersection. A collision occurred between the two cars about 50 feet south of the intersection, which collision has given rise to these two suits.

For a cause of action, both plaintiffs set out the same allegations of fact as to the negligence of Wilson, with the exception that Hilborn alleged he was a guest in the car driven by Wilson. He alleged that while riding as a guest with Wilson on May 24, 1933, at about 4:15 o'clock p. m., in a westerly direction along an unnamed highway at a point about two miles north of Bossier City, the said automobile was negligently, carelessly, and recklessly turned to the left onto said Louisiana Highway No. 10, which is the Benton-Bossier City highway, and driven into an automobile being operated in a northerly direction upon said Louisiana Highway No. 10 by Miss Kate Stafford Johnson. That the collision occurred near the intersection at a point about 50 feet south of the intersection; that at the time of the accident, Miss Johnson was driving on her right side of said highway. He alleged the car driven by Wilson, in which he was riding, was being driven in a careless and reckless manner, at an excessive rate of speed.

Plaintiff further alleged that Wilson failed to keep a proper lookout; that Wilson was driving on his left side of the road when the accident occurred. He fur-

ther alleged that Wilson was an employee and/or agent of the Emergency Relief Administration of the state of Louisiana, created by and functioning under proclamation of the Governor of the state of Louisiana, under date of March 16, 1933, for the relief of destitution caused by unemployment in the state, as a representative of the Governor of the state and under the supervision of the Federal Relief Administration, to disburse funds made available by the Reconstruction Finance Corporation, under the Federal Emergency Relief Act of 1933 (15 U.S.C.A. §§ 721–728). That the duties of Wilson were of a supervisory nature and which necessitated the use of an automobile. At the time of the accident, Wilson had just completed checking a crew of employees, and was on his way to the office to report the result thereof. That upon its organization throughout the state of Louisiana, the said ERA entered into a contract of insurance with the said Continental Casualty Company, said contract bearing No. CA–1456889, dated September 13, 1932, and being for a term of one year thereafter following, by which the said Continental Casualty Company agreed to pay any damages caused by the negligent operation of any automobile in the service of the said ERA, and that said collision happened at a time when the automobile driven by the said J. W. Wilson was actually in the service of the said ERA and being used by it for its benefit; said policy of insurance being at said time in full force and effect. That the said policy of insurance, by virtue of the laws of the state of Louisiana, inured to the direct benefit of plaintiff. That, pursuant to its policy of contracting with its employees and others for the use of automobiles, the ERA contracted with the owner of the car driven by the said Wilson for its use and its service, and through its duly authorized agents and employees instructed the said Wilson to use said automobile while discharging his said duties for the ERA, and in the discharge of which duties he was engaged when the said collision occurred.

Plaintiff then alleged the injuries received, and itemized the damages claimed.

To this petition of plaintiff defendant filed an exception of no cause or right of action, which was overruled. Defendant then answered denying the principal allegations of plaintiff's petition, and further answered as follows:

"Further answering, defendant shows that it cannot in any way be made to respond to the plaintiff in damages because,—

"1. No action is maintainable against the defendant under the terms of the policy until after the amount of loss has been fixed either by final judgment against the assured, ERA, by the court of last resort after a trial of the issue, or by agreement between the parties with the written consent of the company, and that neither of these conditions have been fulfilled; and

"2. That defendant consented to be liable under the terms of its policy for only such liability as was imposed by law upon the ERA, and defendant avers that the ERA is a State instrumentality, agent, board or commission exercising a governmental function in the conduct of public charity and the disposition of the poor and relief of the destitute, and is likewise a charitable institution operated without gain and for the purpose of relieving the poor and suffering, and that there is no liability upon the part of the ERA, under the allegations of plaintiff's petition, and that there is consequently no liability upon the defendant in this case under the very terms of the policy which it issued to the ERA.

"23. Defendant further shows, in the alternative, and in the alternative only, and only in event the court should hold adversely to the defenses set forth in the preceding article hereof, and hold that plaintiff has a direct right of action against this defendant, then and in that event plaintiff cannot recover for the reason that the automobile which was driven by the said J. W. Wilson at the time of the accident and which is alleged in Article 17 of plaintiff's petition to have been contracted for by the ERA with Wilson for the use and service of the ERA, was in fact hired or leased by the ERA from the owner thereof at the stipulated rate of four cents per mile. That under the terms of the policy there was excluded from coverage and liability on the part of the defendant any automobile hired or leased by the ERA, and that the car driven by Wilson and involved in this accident was a car hired or leased by the ERA and that under the plain terms of this policy defendant is not responsible.

"24. In the further alternative, and in the alternative only, and only in the event this court should adversely hold to the

defenses set forth in the two preceding articles of this answer, then and in that event defendant shows that said J. W. Wilson was not at the time of the accident engaged in the service of the ERA, as its agent or acting within the scope of his employment by the ERA.

"25. And in the further alternative, and in the alternative only, and only in the event the court should hold adversely to the defenses set forth in the three preceding articles hereof, and should hold that J. W. Wilson was at the time of the accident engaged in the service of the ERA as its agent, then and in that event, defendant avers that said J. W. Wilson was not acting in the course or scope of his employment in transporting James Hilborn, there being a strict prohibition against the carrying of passengers by employees of this organization, and it being wholly outside the line of his duty to carry such passengers.

"26. In the further alternative, and in the alternative only, and only in the event the court should hold adversely to the defenses set forth in the four preceding articles hereof, then and in that event, defendant shows that the said J. W. Wilson was exercising due care in the operation of said automobile, and was in no manner negligent in the operation thereof either before or at the time of the accident, and that the sole and only cause of the accident was the negligence of the driver of the other car, Miss Kate Stafford Johnson, in driving at a dangerous, rapid and excessive rate of speed and in failure to keep a proper lookout for the approaching Wilson car.

"27. In the further alternative, and in the alternative only, and only in the event the court should hold adversely to the several defenses set forth in the preceding articles of this answer, and particularly only in the event the court should hold that J. W. Wilson was negligent in the operation of said automobile at the time of the accident, then and in that event defendant shows that James Hilborn was guilty of contributory negligence barring his recovery in the particulars hereinafter set forth:

"(a) In failing to protest against the manner in which he now alleges that J. W. Wilson was driving the car in which he was riding; although said Hilborn had ample opportunity and time so to protest.

"(b) In failing to keep a proper lookout particularly in view of the weather conditions, and in failing to warn said J. W. Wilson of the approach of said other car. Further shows that the place where the accident happened during daylight is at the intersection of two highways; that it is perfectly flat, open and treeless country, and that there was no movable or immovable object to interfere with the view of the driver of either car within a half mile of the intersection; that if James Hilborn had been observant and watching, he would have seen the approaching car driven by Miss Johnson and could have taken any necessary measures and steps to acquaint J. W. Wilson with the fact that said other car was approaching and thus avert the accident, but in fact said James Hilborn did not see the Johnson car at any time until it was six feet away from the Wilson car; and that said James Hilborn was guilty of independent contributory negligence of such a nature and degree as to bar his recovery in this action.

"(c) That at the time of the happening of the said accident and for some few minutes before then, the said James E. Hilborn had abandoned the exercise of his own faculties and entrusted his safety absolutely to the driver, J. W. Wilson; and that had he exercised his own senses of sight, hearing and perception, he would have discovered the existence of the approaching car in time to warn J. W. Wilson and to take such other steps as would have avoided the accident."

The same allegations of negligence are made by the plaintiff in the other suit, which is consolidated with this one for trial, and the same defenses set up, with possibly a few exceptions unnecessary to mention.

The lower court rendered judgment in favor of both plaintiffs, in favor of Mrs. Johnson, for the use and benefit of her minor daughter, in the sum of $150; and in favor of Hilborn, for the use and benefit of his minor son, in the sum of $525. From this judgment defendant has appealed, and urges the exception of no cause or right of action in the Hilborn case, but abandons it in the Johnson case.

The exception is based upon the proposition that when Wilson invited young Hilborn to ride with him, he was not pursuing any business of his employer; his act in doing so being an independent, pri-

vate purpose of his own, without the knowledge or consent of his employer; that he was acting as his own master, and not as a servant of his employer. Since the same defense is raised in the answer, we prefer to pass on the merits of the case.

The facts found by the lower court we find to be correct, and they are as follows:

"On the trial of the case the following facts were established by the testimony of the various witnesses and the testimony of the witnesses will not be reviewed here.

"W. H. Wilson was employed by the ERA as assistant placement officer for Bossier Parish. J. G. Scheib was placement officer for seventeen parishes in North Louisiana, with headquarters in Shreveport. C. A. Fenet was disbursing officer for Bossier Parish. Wilson worked under the supervision of both Scheib and Fenet. He worked six days a week and was paid $1.50 a day in cash; he furnished and used his own automobile for which he was paid four cents a mile, these payments being made by check at stated intervals. There were some 20 crews working in Bossier Parish and Wilson's duty was to visit as many crews each day as he could and to report daily on his checking of the crews and the progress of work on the various projects. Usually Fenet checked the mileage on Wilson's car each morning and again when he came in at could and to report daily on his checking and Wilson turned in the mileage himself. Occasionally Fenet drove Wilson's car on short errands, obtaining his permission to do so, and counting the mileage the same as that put on it by Wilson. The latter part of May, 1933, W. H. Wilson wanted to lay off two days to go to New Orleans, and took the matter up with Mr. Scheib at Shreveport, and was referred to Fenet. He arranged with Fenet for his brother, J. W. Wilson, to go out these two days, which were the 23rd and 24th of May, 1933, but the brother was not to be paid for the two days' work, nor was W. H. Wilson to be paid for them, but mileage for the automobile was to be paid.

"On the afternoon of May 24, 1933, Dr. C. H. Irion, who lives at Benton, asked his granddaughter, Miss Kate Stafford Johnson, to take his automobile and drive him down to Shreveport to get his glasses repaired. She asked her mother, the plaintiff, Dr. Irion's daughter, to go with her to Shreveport, and they went together, the daughter driving. They were returning to Benton, around 4 o'clock P. M., and had almost reached the intersection of the Benton highway (10) with the unnamed highway, sometimes called the Benton cut-off, which connects highway 80 with highway 10, shortening the distance from points east of Bossier City to Benton. This cut-off was paved from highway 80 to highway 10, but after crossing highway 10, it was gravelled into the northern section of Bossier City. (This extension has now been paved and connects with the new traffic bridge over Red River, and is largely used by traffic entering Shreveport from the east, but at the time of the accident was little used.) The car being driven by Wilson reached the intersection first and made a left turn to go south to Bossier City on highway 10. Evidently the Wilson car was traveling a little fast or the road was slippery from the rain, and he partially lost control of it, and after making the turn and getting over on his right side of the road, he swerved his car, or it swerved in spite of him, to the left and struck Dr. Irion's car, and Mrs. Johnson was thrown out on the roadway and injured about as alleged in the petition and is now partially disabled.

"I am not impressed with the defense of contributory negligence. Miss Johnson, who was driving the car in which the plaintiff was riding, is a well developed girl for her age, which at the time of the accident was sixteen years. She is fully grown in size, weighing probably 115 pounds or more and appears very intelligent. She has been driving automobiles since 1929. She says she saw the Wilson car before it reached the intersection and it was nearer the intersection than she was. The Wilson car had reached the intersection and turned south before the collision occurred. She was on her right hand side of the road and was not driving at an excessive rate of speed, and had the right to expect that Wilson would keep to his right, and if he had, there would have been no accident.

"I am of the opinion that J. W. Wilson was either the employee or agent or representative of the ERA and that he was in the discharge of his duty at the time of the accident, so the plaintiff is entitled to recover unless barred by all or some of the legal defenses interposed by defendant.

"It is contended by defendant that the automobile of Wilson was hired or leased by the ERA and therefore not covered by the policy. It would seem that if the automobile had been hired or leased by the ERA, it would have been under the exclusive control of the ERA. The testimony does not bear this out. When others connected with the ERA wanted to drive the car Wilson had to be asked about it first.

"Defendant says the ERA is a charitable organization and cannot be sued in tort. This contention was disposed of on the trial of the exception of no cause and no right of action, as was also the 'no action' clause of the policy. (This defense is abandoned here.)

"This leaves only the defenses that the ERA is a State Agency and as such cannot be sued in tort, and the contention that Wilson was an independent contractor. Plaintiff objected to any evidence to show that Wilson was an independent contractor on the ground that it had not been alleged, and while I am of the opinion the objection was probably good, we can as well pass on the merits of that contention because, in my opinion, the testimony offered in support of the contention is not sufficient to support it. Wilson had certain duties to perform and he was to make daily reports. He says sometimes he made several reports at a time for several days back, but he was supposed to make them daily. Mr. Scheib testified that Wilson was under supervision of both himself and Mr. Fenet, and that he was to work only a certain number of hours daily. If he had been an independent contractor, it would have been immaterial how many hours a day he worked. (This defense is abandoned here.) * * *

"No evidence was offered in support of the allegation that there is a prohibition against Wilson carrying a passenger, and no evidence as to contributory negligence of Hilborn, except a statement signed by him June 13th, shortly after the accident, in which he says he did not see the Johnson car until it was about six feet from them. He says he thinks Wilson saw it before he did.

"It is apparent that if Wilson had stayed on his right hand side of the road after he made the left turn to go south, there would have been no accident, but for some reason, his car swerved to the left and he says when he saw the cars would collide, he cut still further to the left in an effort to have a headon collision instead of side-swiping collision, which he thought would be more dangerous. It is apparent that Hilborn then had no time to protest or to warn Wilson, so I conclude he was not guilty of contributory negligence. He was riding on the opposite side of the car from the direction in which the Johnson car was approaching, and Wilson was between him and the approaching car."

Based on these facts, judgment was awarded both plaintiffs. It found that Miss Johnson was only slightly injured, which we think is correct, and find no error in the amount of the award in her favor. However, we are convinced that the judgment in the Hilborn case is erroneous, and think there should have been judgment for the defendant therein.

The record, we think, is clear that Hilborn was riding with Wilson without the knowledge or consent of those in charge of the ERA in Bossier parish, who had supervision over Wilson. There is no testimony to show that it was customary for guests to be carried in the cars of those employed by the ERA. This being true, the ERA could not be held liable, and the insurance company could not be held liable for the reason the policy of insurance does not contain the "omnibus clause"; therefore, if the insured is not liable, neither is the insurer. Jefferson v. King, 12 La.App. 249, 124 So. 589; Ruiz v. Clancy et al., 182 La. 935, 162 So. 734.

Our conclusion, therefore, is that the judgment in the case of Mrs. Leila I. Johnson versus Continental Casualty Company should be affirmed, with costs; and the judgment in favor of Cleveland Hilborn, tutor, versus Continental Casualty Company should be reversed, and plaintiff Hilborn cast for costs.

It is so ordered and decreed.