Plaintiffs, the mother and father of William K. Lipscomb, deceased, prosecute appeal from judgment rejecting their demands in damages against the News Star World Publishing Corporation for the death of said son, allegedly caused by the negligence of the defendant's agent, Russell E. Rawls, while performing duties within the scope of his employment.
The defendant publishes a daily paper in the City of Monroe, Louisiana. The paper's circulation embraces a large area in all directions from said city. As a means of making quick and regular deliveries of papers to points remote from the city, the company owns and operates a fleet of trucks. Drivers are hired to operate them. On the morning of November 22, 1939, Russell E. Rawls, a regular employee of the company for over three years, was placed in charge of a truck laden with papers destined for points in the northeastern portion of the state. He left the city about 6 o'clock A.M., but before doing so drove by the office of the City Cab Company and there picked up Lipscomb to accompany him on the trip. The trip was uneventful until they attempted to recross the track of the Missouri Pacific Railway Company at or near Alsatia, Louisiana, in Madison Parish. At this crossing the truck was struck by a southbound train at about 8:30 o'clock, A.M. and both occupants were instantly killed.
In support of their theory of liability, plaintiffs allege that Rawls, for three years prior to his death, regularly invited persons to accompany him on trips made in the discharge of his duties to the defendant; that the defendant through its duly authorized officers had knowledge of this practice and impliedly consented thereto and acquiesced therein; that by said consent and acquiescence defendant invested said agent with apparent authority to extend invitation to persons to and who did in fact ride with him; that for said reasons, at the time of his death, William K. Lipscomb was an invitee of the defendant.
Responsibility for the accident is charged to Rawls exclusively. The train's operatives are exonerated from any fault or negligence whatever. Rawls is charged with having driven the truck upon the track carelessly and negligently, without stopping, looking or listening for the approaching train which, at the time, was in full view and could not be stopped before reaching the crossing.
In the alternative, should it be found and held that defendant did not have knowledge of the habitual acts of its said agent, in the *Page 43 
respects above mentioned, and did not acquiesce therein, and that said deceased was not an invitee, plaintiffs assert defendant's liability to them on the ground that Rawls did "wilfully and wantonly drive the automobile upon the track in the path of the approaching train, thereby fatally injuring the deceased."
Defendant denies liability to plaintiff on any account. It denies knowledge, if such were true, of Rawls' practice of inviting persons to accompany him on trips for defendant, and avers that if he did so it was in direct violation of its rules and orders of which Rawls had personal knowledge; that it had no knowledge that deceased accompanied Rawls on the fateful trip of November 22d until news of the accident reached it; that by inviting deceased to make the trip and allowing him to ride in the truck, Rawls acted in violation of defendant's long established rule and beyond the scope of his employment; that when killed, as regards defendant, the deceased was a trespasser.
Only one witness to the accident survived. He is the engineer in charge of the train. He testified that when he first observed the truck it was approaching the track from the east at a moderate speed; that the whistle was blown four times and the brakes forcefully applied; that the speed of the truck was increased, seemingly to beat the train to the crossing.
The deceased did not know what struck him as the engineer says he was asleep "with his head over the back of the seat". The engineer did not know either party but the description he gave of the man asleep identifies him as being Lipscomb. Manifestly, the negligence of Rawls accounts for the tragedy; and this too, whether he saw the train and tried to beat it to the crossing or not.
It is probably true, in fact the record fairly well substantiates the allegation, that Rawls often invited or allowed persons to ride with him when on business for defendant. It is not proven that any officer of defendant had personal knowledge that he did so. Rumors implicating him in such practice did reach Mr. Murdoch, Circulation Manager, and he invariably reprimanded Rawls for so doing and reminded him of the company's rule on the subject.
All employees of defendant knew of the rule which forbade truck drivers to allow persons to ride with them. On March 15, 1939 a written statement calling attention to the rule and that it had been violated by some drivers was posted on a bulletin board and a copy of same delivered to each driver. They were therein informed that the rule would be strictly enforced. In addition, a sticker was affixed to each truck's windshield containing the words: "No Riders". On three different occasions drivers were discharged for violating the rule. Mr. Wilson Ewing, defendant's publisher and editor, testified that observance and enforcement of this rule was invariably insisted upon, and that if he had caught any driver violating it, instant discharge would have followed.
The duty of seeing the discussed rule enforced devolved primarily upon Mr. Murdoch, circulation manager. He testified, to which there is corroboration, that he often refused permission for any of the employees to ride with the truck drivers, but in some instances did consent thereto when the services of such employees were needed, but in no instance did he nor would he consent to strangers riding in the trucks.
The record, as a whole, unquestionably establishes a consistent and conscientious effort on the part of defendant's agents and officers to enforce its rule. It was impossible for them to know, especially at night or early hours of mornings, when the rule was violated. The fact that some drivers were discharged for infracting the rule and others reprimanded when suspected of so doing, argues most forcefully and conclusively against acquiescence in or ratification of the rule's violation.
It is well established in this state that when a person rides in a motor vehicle on the unauthorized invitation of the owner's employee, the status of the rider quoad the employer, is not that of guest or invitee but as trespasser; and if the rider is injured or killed from the driver's simple negligence while this status subsists, no liability therefor attaches to the employer. If this were not true the employer would be exposed to unnecessary vexatious lawsuits, financial loss and possible bankruptcy, on account of the indiscretion, carelessness and negligence of his drivers.
A motor vehicle driver is employed to perform definite duties for the employer. When he chooses to perform acts or deeds not necessary nor incidental to the discharge of such duties, he exceeds the scope of his employment and in thus acting only subserves his personal interest and purposes. Evidently Rawls was averse to driving alone. He wished company on *Page 44 
the monotonous trip to deliver papers. He chose young Lipscomb. This was done without the knowledge or consent, express or implied, of the defendant, its authorized agents or officers, and this being true, the deceased while riding and when killed was, as regards defendant, a mere trespasser. Jefferson et al. v. King, 12 La.App. 249, 124 So. 589; Coffey v. Ouachita River Lumber Company, Inc., et al., La.App., 191 So. 561-565; Lowery v. Zorn et al., La.App., 157 So. 826-833; Johnson v. Continental Casualty Company, La.App., 164 So. 655; Id., La.App., 167 So. 114; Ruiz v. Clancy et al., 182 La. 935, 162 So. 734.
In Donovan et ux. v. Standard Oil Company et al. La.App., 197 So. 320-325, the violation by an employee of the master's orders and rules is discussed. Plaintiff cites and relies upon: Elbert v. Creswell Street Pharmacy, Inc., La.App., 161 So. 42; Kimbell v. K.C.S. Drug Company, Inc., et al., La.App., 166 So. 895.
In view of our fact findings, these cases are not pertinent. In each it was found and held that the employer knew of and acquiesced in the unauthorized acts of the employee in inviting persons to ride with him.
There is no merit in the contention advanced that Rawls had apparent authority to invite strangers to ride in the truck with him. The record before us positively repels any such inference.
But, contends appellant, even though Lipscomb's status was that of trespasser, he was entitled to the rights and protection of a trespasser, to-wit: Not to be wantonly and wilfully injured or killed by the negligent acts of the employee. To support this position, appellant cites: 5 Blashfield's Cyclopedia of Automobile Law and Practice, Perm.Ed. §§ 3016, 3017, pages 144-151, inclusive; Jefferson v. King, supra; Lowery v. Zorn, supra.
Blashfield, after discussing the well-established legal principle that the status of one riding on a motor vehicle at the driver's invitation, but in violation of the employer's rules, and without his consent, is that of trespasser quoad the employer, says:
"Notwithstanding the general rule laid down in the preceding section, it is settled by the weight of judicial decisions that, if after the unauthorized act of the servant and the violation of his duty to his master, and when acting in the general scope of his authority, he becomes guilty of wanton, willful or reckless negligence in the operation of the machine or vehicle in his charge and injuries result therefrom to his invitee or licensee, the master is liable therefor, such operation being regarded as done within the general scope of his authority.
"Stated conversely, it may be said, that the master owes no duty to the servant's invitee who is a trespasser, except to see that he is not willfully or wantonly injured.
"To constitute `wanton negligence', it is not necessary that there should be ill will toward the person injured; but an entire absence of care for the safety of others, which exhibits indifference to consequences, establishes legal wantonness. Such a mental attitude distinguishes wrongs caused by wantonnegligence from torts arising from mere negligence."
Jefferson v. King, [12 La.App. 249, 124 So. 591] does not serve as a precedent for the quoted rule as Judge Odom, the Court's organ, plainly says: "Whether that rule should be applied and enforced against the owner of a motor vehicle whose chauffeur without authority, express or implied, invites a passenger to ride and while so riding is injured, is questionable. Courts of last resort are not uniform in their holdings on that point."
Judge Mills in Lowery v. Zorn, [157 So. 833] did refer to Quinton, the rider, as being a trespasser on the truck involved in the case "to whom was owed no other duty than not to wantonly injure him". Jefferson v. King is referred to, apparently, to support this statement. No other Louisiana case on the subject is cited by counsel. We know of no others.
American Jurisprudence, Volume 5, pages 729, 730, discusses this subject and says that the tendency of the more recent decisions is to enlarge the employer's freedom from liability for the unauthorized acts of the employee in inviting others to ride with him. However, this authority agrees with Blashfield as regards the duty due to a rider trespasser.
We are disposed to follow the majority rule on this subject and to hold that if the rider trespasser is injured by the wilful and wanton negligence of the driver, the employer may be held in damages therefor. Therefore, it becomes necessary to decide whether the testimony establishes that Lipscomb's death was due to the wanton *Page 45 
and wilful negligence of Rawls, the driver. We have only the engineer's testimony as to how the collision occurred. He thinks, from the increased speed of the truck after coming into view of the train, that Rawls raced to gain the crossing ahead of the train.
If the testimony conclusively proved that Rawls observed the presence of the train to his right and raced to beat it to the crossing, there would be no escape from holding that in doing so, he acted wantonly, wilfully and heedlessly, and that his negligence was of the grossest sort. The effort to beat the train to the crossing would certainly have been wilful and deliberate.
Webster defines wanton as: "Reckless; heedless, with an utter disregard of right or consequences."
Bouvier defines it in these words: "A heedless and reckless disregard for another's rights, with the consciousness that the act or omission to act may result in injury to another. Hazle v. [Southern Pac.] Co. [C.C.] 173 F. 431." 2 Bouv.Law Dict., Rawle's Third Revision, p. 3418.
Wanton and reckless are virtually synonymous in meaning.
Wanton negligence and wilful negligence are discussed and definitions thereof quoted in Jefferson v. King, supra, as follows:
"To constitute `wanton negligence,' as that term is used by some of the courts, the party doing the act or failing to act must be conscious of his conduct and, `without having the intent to injure, is conscious, from his knowledge of existing circumstances and conditions, that his conduct will naturally or probably result in injury.' See Words and Phrases, First Series, vol. 8, p. 7385, and authorities cited.
"Willful negligence has been said to be an `intentional failure to perform a manifest duty which is important to the person injured in preventing the injury.' Words and Phrases, First Series, vol. 8, p. 7484."
Many courts have endeavored to define wanton negligence. There is variation, slight in most instances, between all definitions. What is said above, together with the quotation from Blashfield, reflects a fairly accurate meaning of the term in legal contemplation.
No one will be presumed to act in wanton and/or wilful disregard of the rights of others. To race with a train is a gamble with death. The driver hazards the safety of his own life and limb to gain a minor advantage, and likewise exposes his guest or other occupants of the vehicle to the same consequences. Such a wanton act smacks of criminality and could result in criminal prosecution, especially when a sleeping guest is killed. No one is presumed to have criminal intent nor to be motivated by intents and purposes which would convict him of involuntary crime. To wilfully injure a person from voluntary negligence is within itself criminal.
In the present case, plaintiff carried the burden of proving that the death of Lipscomb happened because of the wanton and wilful negligence of Rawls as operator of the truck. This burden has not been successfully met. It cannot be overlooked that in the operation of the truck, Rawls was exposed to the same danger as was Lipscomb. The first law of nature is that of self-preservation. A person is conclusively presumed to act in such manner as will not unnecessarily expose himself to physical harm. To race with a fast moving train, the operator knows that should he fail to negotiate a crossing ahead of the train, dire consequences will surely follow. Rawls, of course, was aware of this.
Defendant's truck had crossed the railway from the west and had gone east some 200 feet to deliver a paper. After doing this, it turned around and started back toward the track. Naturally, in going from stop the truck's momentum gradually increased. The farther it went, the faster the speed. This likely accounts for the engineer's belief that the speed was increased in an effort to beat the train to the crossing. This explanation for the truck's acceleration toward the track is more rational and plausible than to say that the driver exposed himself and his companion to the danger of death by foolishly racing to the crossing.
We find no error in the judgment appealed from and for this reason, it is affirmed with costs. *Page 46