456 So.2d 659 (1984)
Don J. BABIN
v.
Keith EDWARDS, et al.
No. 83 CA 0890.
Court of Appeal of Louisiana, First Circuit.
August 22, 1984.
Writ Denied November 16, 1984.
*660 William J. Dodd, Dodd & Picou and Robert Picou, Houma, for plaintiff, Don J. Babin.
Jerry H. Schwab, Schwab & Butler, Houma, for plaintiff, Lawrence Lacy.
Owen M. Goudelocke, Lafayette, for defendants and appellants.
Leonpold B. Babin, Houma, for intervenor-appellant, Home Insurance Co.
Before SHORTESS, LANIER and CRAIN, JJ.
CRAIN, Judge.
This is an appeal from a judgment by the trial court in a personal injury suit in favor of plaintiffs, Don J. Babin and Lawrence Lacy, and against defendants, Michael LeBouef, Fletcher Wallace, Ernie Pinel and Home Insurance Company.

FACTS
In his written reasons for judgment, the trial judge made the following findings of facts.
Plaintiffs, Don J. Babin and Lawrence Lacy were injured in an industrial accident on January 22, 1980. Don J. Babin was employed by Acadian Shipyards, Inc. as a fitter and Lawrence Lacy was also employed by Acadian Shipyards, Inc. as a tacker.
On January 22, 1980, they were working together to tack off the front plate of a barge that was being constructed at Acadian Shipyard. The plate was a sheet of metal 7' × 24' × 5/16" and weighing 2635.65 pounds. The plate was suspended perpendicular to the deck by a *661 crane and a single-chain "come along" from the center line bulkhead to the plate as well as a double-chain "come along" from the plate to the bottom of the barge.
The crane is hooked to a strutter bar, i.e. a piece of pipe, 15-20 feet long, by connecting cables from the crane with cables attached to the strutter bar. The strutter bar has two sheet clamps located on each end of the strutter bar. These clamps are then connected to the steel plate to enable the crane to lift the plate. Once the plate is lifted into place by the crane, "come alongs" are placed on the sheet to help secure it in place. The "come alongs" are attached to the plate with padeyes. A padeye is a small piece of metal with a hole in it that is welded to the plate. The "come-alongs" are then attached to the padeyes.
In this case, the double chain "come-along" broke, leaving the plate suspended by the crane and the single-chain "come along". The failure of the double chain "come-along" caused the plate to shake, wobble, and make loud noises. The double chain "come along" was then replaced by plaintiffs.
After the new double-chain "come along" was in place, Mr. Babin's immediate supervisor, Mike LeBoeuf, decided to remove the crane, leaving the plate supported only by the "come alongs". Don Babin protested the removal of the crane to Mike LeBoeuf. Mr. Babin testified that he told Mr. LeBoeuf that it was not safe to remove the crane. Despite the warnings of Don Babin, the crane was removed on the orders of Mike LeBoeuf. Within minutes of the removal of the crane, the "come alongs" failed and the plate fell, causing severe injuries to Don Babin and Lawrence Lacy.
As a result of this accident, Don Babin and Lawrence Lacy each filed a suit for damages against Acadian Shipyards, Inc. and some of its executive officers; namely, Keith Edwards, George Mayes, III, Dale Smith, Fletcher Wallace, James Pate, Ernie Pinel, Donald Dominque, and Mike LeBoeuf. After both suits were filed, they were consolidated for the purposes of trial.
An intervention was filed by Home Insurance Company, the workmen's compensation insurer for Acadian Shipyards seeking recovery for the amounts which it paid to plaintiffs under the workmen's compensation statute.
After trial on the merits, the trial judge held in favor of the plaintiffs and against defendants, Michael LeBouef, Fletcher Wallace, Ernie Pinel and Home Insurance Company, and dismissed the other claims. Home Insurance Company was granted reimbursement for worker's compensation benefits paid.
The court awarded plaintiff, Don Babin, the total sum of $4,342,304.40 against the defendants named above, in solido. Plaintiff, Lawrence Lacy, was awarded the sum of $580,774.54 against the same defendants.
The trial judge dismissed plaintiffs' demands against defendants, Edwards, Mayes and Smith in light of a joint stipulation by the parties at the outset of trial that they were not at the work site, had no day-to-day control over the operations there, and that they were simply principals in the holding company which owned Acadian Shipyards, Inc. The trial court also dismissed plaintiffs' demands against defendants, Pate and Dominque, on the ground that neither "had responsibility for supervision of Michael LeBouef (the foreman) at the time of this accident."
On the intervention claims of the Home Insurance Company, the court rendered judgment against plaintiff, Babin, in the amounts of $34,100.54 (compensation paid) and $75,651.95 (medical benefits paid); and against plaintiff, Lacy, in the amounts of $8,991.63 (compensation paid) and $37,294.54 (medical benefits paid). These were the amounts stipulated in a post-trial stipulation of April 11, 1983.
The trial judge also fixed and taxed as costs the expert witness fees of two witnesses (Dr. Goodman, an economist, $350.00 and Mr. Starns, $500.00), and then *662 assessed all costs of the proceedings against the defendants.
From that judgment, each of the defendants appeal, arguing four assignments of error. Defendants' first and second assignments of error take issue with the trial judge's interpretation and application of the "intentional act" exception to the otherwise exclusive worker's compensation remedy under La.R.S. 23:1032. Our disposition of these first two assignments of error makes it unnecessary for us to discuss the merits of those remaining.

INTENTIONAL ACT EXCEPTION
La.R.S. 23:1032, as amended by Act 147 of 1976, provides, in pertinent part:
The rights and remedies herein granted to an employee ... on account of an injury ..., shall be exclusive of all other rights and remedies ... against his employer, or any principal or any officer, director, stockholder, partner or employee of such employer or principal...
Nothing in this Chapter shall affect the liability of the employer, or any officer, director, stockholder, partner or employee of such employer or principal to a fine or penalty under any other statute or the liability, civil or criminal, resulting from an intentional act. (Our emphasis).
Prior to the amendment in 1976, the absence of a prohibition against tort suits against co-employees allowed injured workers to seek tort recovery from negligent executive officers and their liability insurers. The "executive officer" suits became a major loophole in the law, and in an effort to close that avenue of recovery, the legislature adopted Act 147 of 1976. However, the legislature chose to make the exclusive remedy rule contained in La.R.S. 23:1032 inapplicable to an "intentional act." The phrase "intentional act" was finally agreed on by the legislature after rejection of amendments which would have expanded the exclusive remedy exception to instances of "deliberate" acts or "gross negligence." Official Journal of the Proceedings of the House of the State of Louisiana, 2d Reg.Sess. at 21 (June 4, 1976); Official Journal of the Proceedings of the Senate of the State of Louisiana, 2d Reg. Sess. at 41, 42 (July 12, 1976).
Since the amendment went into effect, "[a]lmost without exception, a narrow interpretation [of the intentional act exclusion] has been adopted. Such an interpretation is consistent not only with the policy of the Act, but also with the legislative history of the 1976 amendments." Johnson, Developments in the Law, 1980-1981 Workers' Compensation, 42 La.L.Rev. 620, 630.
Although uniformally unsuccessful, litigation has been spawned by the case of Bazley v. Tortorich, 397 So.2d 475, 481 (La.1981), where the Louisiana Supreme Court, adopting the definition of intent found in the Restatement of Torts, 2d, American Law Institute, Sec. 2 (1965), found that in order to find an intentional act, the person who acted either (1) consciously desired the physical result of his act; or (2) knew that the result was substantially certain to follow. This remains the jurisprudential interpretation of proof of "intentional act". Fallo v. Tuboscope Inspection, 444 So.2d 621 (La.1984).
The meaning of the first standard-conscious desire-is clear. However, the alternative test for finding an intentional act has caused confusion because it has been presented as an alternative to an intentional act rather than a method of proving an intentional act. We adopt the reasoning found in the following exerpt from Johnson, 42 La.L.Rev. at 632, 633:
The traditional definition is simply a way of relieving the claimant of the difficulty of trying to establish subjective state of mind (desiring the consequences) if he can show substantial certainty that the consequences will follow the act. The latter takes the case out of the realm of possibility or risk (which are negligence terms), and expresses the concept that an actor with such a certainty cannot be believed if he denies that he knew the consequences would follow. In human experience, we know that specific consequences *663 are substantially certain to follow some acts. If the actor throws a bomb into an office occupied by two persons, but swears that he only `intended' to hurt one of them, we must conclude that he is nonetheless guilty of an intentional tort as to the other, since he knows to a virtual certainty that harmful consequences will follow his conduct, regardless of his subjective desire.
In sum, in order to avoid the exclusive remedy of worker's compensation, a defendant must act with an intent to injure the plaintiff. This intent can be shown either by proving the defendant acted with a desire to harm plaintiff or by proving that defendant acted with knowledge of facts that from his act plaintiff's injury was substantially certain to result. Fallo, 444 So.2d at 622. "Substantially certain" is not an alternative to "intentional act". It is a method of proving that the act was intentional. Fallo makes it clear that this is the correct interpretation of La.R.S. 23:1032.[1]

PROOF OF INTENT TO INJURE
The plaintiffs never argued, nor is there any evidence that Mike LeBoeuf consciously or actively desired to injure the plaintiffs. Therefore, the issue is whether the evidence shows that Mike LeBouef intended to injure the plaintiffs because he acted with the knowledge that the plaintiffs' injuries were substantially certain to follow from his actions.
Nowhere in the trial judge's reasons for judgment does he state that he found that Mike LeBouef actually intended to injure Don Babin or Lawrence Lacy. He does not suggest that LeBouef held any malice towards either. While he does use language indicating that he found that Mike LeBouef believed that it was substantially certain that the plate would fall, he also uses the following language:
To put it another way, the issue before the Court is whether when defendant, Mike LeBouef, acted he knew or should have known that plaintiffs would certainly be injured by the fall of the plate. This is the test which the Court must apply to the facts of this case. (Our emphasis).
The trial judge also mentions in detail his reliance on the testimony of plaintiff's expert, Marion I. Starns, III, stating that, "Mr. Starns was unequivocally of the opinion that Michael LeBouef should have known that the steel plate was substantially certain to fall upon the removal of the crane." (Our emphasis). The use of this test was clear error. Fallo, 444 So.2d at 621.
After examining the record, we find that the closest anyone comes to testifying that Mike LeBouef intended to injure the plaintiffs, is contained in the following self-serving testimony of Don Babin under cross examination:
Q. All right. Now what I'm asking you now is: Do you believe that he wanted you hurt, and if so, I want to know why? If your answer is yes, I want to know why.
A. Yes.
Q. All right then, why? Why did he want you hurt?
A. There's any number of reasons.
Q. Well, I want to know the reasons. I want to know all of them. You can number them 1 through 20.
A. Well, we disagreed quite a bit and he always wanted to have it done his way. (2) Helet me see how I can put this. He was always more or less a a company man. He wanted it done right then and there. In other words, he would let you know he was the boss and no matter what you said against him, he was the boss. You knew he was going to chew your behind out one way or *664 another if you didn't do exactly what he said.
* * * * * *
Q. Have you told us as much as you can tell us about why you think Mike wanted you hurt?
A. All I've got to say is, he rode me a lot. I mean, I don't know.... I don't know if he thought much of me as a fitter or what the deal was, but he rode me a hell of a lot, if you'll pardon the expression. And that's the best way I could answer that.
We do not find the fact that Don Babin had disagreements with his boss, even disagreements over safety precautions such as the one involving the removal of the crane on the day in question, proof that Mike LeBouef removed that crane with the intent to injure the plaintiffs. This conclusion is strengthened by the fact that there is testimony in the record which places LeBouef in front of the same sheet of metal at least for some period of time before and after the crane was removed. A person is presumed to act in such a manner as will not necessarily expose himself to physical harm. Manning v. Better Way Coatings, Inc., 448 So.2d 227 (La.App. 1st Cir.1984); Lipscomb v. News Star World Pub. Corporation, 5 So.2d 41 (La. App. 2d Cir.1941).
For the foregoing reasons, we find the proof insufficient to show that Mike LeBouef intended to injure the plaintiffs in this case. It does not show he actively desired to injure the plaintiffs, nor that he was substantially certain that the steel plate would fall when he removed the crane. We, therefore, reverse the judgment of the trial court in its entirety in this suit and assign all costs to the plaintiff.
REVERSED AND RENDERED.
NOTES
[1] Fallo states that, "There is not the slightest suggestion in this record that any co-employee acted with an intent to injure the plaintiff, either by acting with a desire to harm him or by acting with the knowledge that his injury was substantially certain to result from the act." 444 So.2d at 621-622. (Our emphasis)