KING, Judge.
The sole issue presented by this appeal is whether the trial court erred in granting defendants’ Motion For Summary Judgment dismissing plaintiff’s claim for damages sought under the intentional act exception to the Louisiana Worker’s Compensation Act, La. R.S. 23:1032.
Aymar Bonin (hereinafter plaintiff) instituted this tort suit against his employer, Bon Electrical Contractors, Inc., and his co-employees, Butch Watkins and Jim Thor-nell (hereinafter collectively referred to as defendants). Plaintiff, who was injured while in the course and scope of his employment with defendants, alleged that defendants either intended plaintiff’s injuries or knew that his injuries were substantially certain as a result of electrical work being performed during the construction of Hamilton Medical Center Hospital in Lafayette, Louisiana. Defendants filed a Motion For Summary Judgment contending that they did not commit an intentional act within the meaning of La. R.S. 23:1032 and, as a result, plaintiff’s sole remedy was worker’s compensation. The motion was heard on October 28, 1988, and taken under advisement. On March 16, 1989, the trial court issued written reasons for judgment finding that plaintiff’s injuries were not SUB-tained as the result of an intentional act on the part of defendants. A formal written judgment was signed dismissing plaintiff’s suit. From this judgment plaintiff has timely appealed. We affirm.
FACTS
Plaintiff was employed as an electrician for Bon Electrical Contractors and assigned to work at the construction site of the Hamilton Medical Center Hospital in Lafayette, Louisiana. His supervisor on the job was Butch Watkins and the assistant supervisor was Jim Thornell. On August 30, 1984, plaintiff was injured when the electrical crew on the job was pulling electrical cable from an underground conduit. The electrical cable had previously been installed in a conduit beneath the ground floor of the building but had to be removed from the conduit because some of the electrical cable was damaged or defective.
In order to remove the electrical cable, the crew tied a rope around the electrical cable and ran the rope up in the elevator shaft to a pulley on the sixth floor of the building. The rope continued back down the elevator shaft, then through a pulley on the second floor and was then wrapped around the “cathead” on the pulling machine or “tugger” on the ground floor. Plaintiff was positioned at the tugger on the ground floor to keep friction on the rope and to keep it secure on the cathead.
The assistant supervisor, Jim Thornell, initially operated the tugger and the rope. In his deposition, which was admitted into evidence in connection with the motion for summary judgment, Thornell stated that the reason he worked the rope first was to make sure the operation was set up properly in order to have a safe pull. Thornell admitted that any pulling operation is potentially dangerous but he was satisfied, after working the rope, that this operation was safe.
Plaintiff operated the tugger and the rope. While operating the tugger, the rope jerked from plaintiff’s hands and came off the cathead. Plaintiff stepped back and *768 accidentally caught his foot in a loop of the rope. The countervailing weight of the suspended electrical cable falling down the elevator shaft caused plaintiff to be lifted up the elevator shaft. When the plaintiffs foot was released from the rope, he fell head first into the pit of the elevator shaft. Plaintiff sustained various injuries as a result of this accident.
On August 1, 1985, plaintiff filed this tort suit. He alleged that he was intentionally injured within the meaning of the exception to this state’s worker’s compensation laws. Defendants filed a Motion For Summary Judgment alleging that there was no issue of material fact as to whether an intentional tort was committed and that, as a matter of law, they were entitled to judgment in their favor. The trial court granted the Motion For Summary Judgment and in its written reasons stated:
“The facts do not lend themselves to show either that the defendants desired to injure the plaintiff or that such injuries were substantially certain to result from their activities....
Therefore, it is my finding that there is no genuine issue of material fact as to the question of an intentional tort and that the defendants are entitled to the judgment dismissing plaintiff’s suit as a matter of law....”
Plaintiff appeals alleging that summary judgment should not have been granted because there exists a genuine issue as to whether defendants were substantially certain that plaintiff would be injured during the pulling operation.
LAW
The Louisiana Worker’s Compensation Act, La. R.S. 23:1032, reads in part:
“The rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights and remedies of such employee.
* * * * * *
Nothing in this Chapter shall affect the liability of the employer, or any officer, director, stockholder, partner, or employee of such employer or principal to a fine or penalty under any other statute or the liability, civil or criminal, resulting from an intentional act.” (Emphasis added.)
Under this statute, an injured employee may seek recovery in tort for a work-related injury intentionally caused by his employer or his co-employee.
As the Louisiana Supreme Court observed in Caudle v. Betts, 512 So.2d 389, 390 (La.1987):
“In interpreting the statute, this court has held that compensation shall be an employee’s exclusive remedy against his employer for an unintentional injury covered by the act, but that nothing shall prevent an employee from recovering from his employer under general law for an intentional tort. Bazley v. Tortorich, 397 So.2d 475 (La.1981)....”
Louisiana courts have defined intentional act for purposes of the exception to the exclusivity of the Louisiana worker’s compensation statute as an act whereby the defendant either consciously desired the physical result that followed or believed that the result was substantially certain to follow from his conduct. Bazley v. Tortorich, supra; Burns v. Kenworth Motor Truck Co., 548 So.2d 49 (La.App. 3 Cir.1989).
In this case, plaintiff claims that his supervisory co-employee, Thornell, had actual knowledge that the rope would jerk in the operator’s hands because the rope jerked when Thornell initially worked the tugger. Therefore, plaintiff concludes that Thornell was substantially certain that, when plaintiff took control of the rope, it would jerk in plaintiff's hands, thereby causing him injury. Plaintiff further alleges that the reason Thornell allowed plaintiff to operate the tugger and the rope was so that Thor-nell could remove himself from the “zone of danger.”
Plaintiff cites the case of Babin v. Edwards, 456 So.2d 659 (La.App. 1 Cir.1984), writ den., 460 So.2d 604 (La.1984), in sup *769 port of his “zone of danger” theory. In that ease, the court rejected plaintiffs claim alleging an intentional tort on the part of his foreman. The court found that the foreman on the job where plaintiff was injured could not have been substantially certain that plaintiff would receive injuries because the foreman also remained within the “zone of danger.” The court noted that “a person is presumed to act in such a manner as will not necessarily expose himself to physical harm.” Id. at 664.
Plaintiff, in this case, contends that, when Thornell gave the rope to plaintiff to operate, he removed himself from the “zone of danger.” Therefore, plaintiff contends Thornell was protecting himself from the serious danger involved and that Thor-nell was substantially certain plaintiff would be injured.
Thornell’s deposition testimony completely refutes plaintiffs conclusion. Thornell testified as follows:
“Q. ... Did you have any desire to bring about this injury?
A. No, sir.
Q. Did you, when you rigged this operation up, and while you were in the process of — well, when you were rigging this operation up, did you have the idea or were you substantially certain that the injury that he was going to — that injury was going to follow?
A. I had no idea that any injury would happen, and really did not expect any injuries.
I had felt — just a personal opinion — felt that we were doing it just the safest way possible.
Q. So when you were rigging this up, you didn’t have any idea that anybody was going to get injured?
A. No, sir.”
Thornell stated that, after he worked the rope and the tugger and was satisfied that the pulling operation was safe, he handed the rope to plaintiff because he was the “next best qualified person to do this. That’s who was standing there, and that’s who I gave it to.” Thornell further stated that the reason he did not continue operating the tugger was because he was in a supervisory position on the job and it was not his duty to operate the tugger and rope. Thornell, however, continued to take part in the pulling operation by operating the plug which supplied power to the tug-ger. He was positioned approximately ten feet from plaintiff in order to supervise the entire operation. When asked if he felt he was in danger where he was standing, Thornell replied:
“Neither of us [he or plaintiff] were in danger of the rope where we were stand-ing_ It was strictly just an accident. The man [plaintiff] had stepped back into a loop when the rope got away.”
Even plaintiff’s own deposition testimony, which was introduced into evidence, controverts his allegations of intentional acts on the part of defendants. The following is plaintiff’s response to defense counsel’s question concerning whether or not plaintiff thought the accident was caused intentionally by defendants.
“A. I would say it was neglect to recognize the situation. That is the way I understood it. Even at the time that he [Thornell] was operating the equipment.
Q. Then what you’re talking about is the judgment call on the part of Mr. Thornell?
A. I would say lack of judgment.
Q. But certainly you don’t think that Mr. Thornell intended that this particular harm come to you?
A. I would have no reason to believe it but I wouldn’t — there is no way I could know that.
Q. How about Mr. Watkins?
A. Same.
Q. Was Mr. Watkins present during the time of this operation?
A. No.
Q. So he was not present at any time during?
A. No.”
The depositions of two of plaintiff’s co: workers who were working on the electrical crew when plaintiff was injured were also introduced into evidence at the hearing *770 of the Motion For Summary Judgment. Both of these co-workers testified that both Thornell and plaintiff operated the tugger in the same manner. One co-worker testified that he knew of no ill will between plaintiff, Thornell and Watkins. He further stated that he did not think defendants intended to single out plaintiff in any way or to hurt him.
Finally, the deposition of Butch Watkins establishes that he was not near the pulling operation when plaintiffs accident occurred. Watkins stated that he never had any problems working with plaintiff. Watkins also stated that he had performed this type of pulling operation many times and he would not have set it up any differently.
A motion for summary judgment should be granted when:
“[I]t is clear there exists no genuine issue of material fact and that the mover is entitled to the judgment as a matter of law. C.C.P. [Art.] 966. A motion for summary judgment may be made at any time and can be based on the pleadings, affidavits, depositions, answers to interrogatories and admissions then on file. Id. Affidavits must be made on personal knowledge and set forth only facts admissible in evidence, and must show that the affiant is competent to testify to the matters contained within the affidavit. C.C.P. [Art.] 967.” Simoneaux v. E.I. Dupont DeNemours, 483 So.2d 908, at page 912 (La.1986).
After reviewing the evidence, we find that the trial court was correct in granting defendants’ Motion For Summary Judgment. None of the depositions introduced into evidence support plaintiffs contention that Thornell was substantially certain that the pulling operation would cause injuries to plaintiff. In fact, Thornell’s own testimony is directly to the contrary.
The record before this Court fails to establish a genuine issue of material fact as to the defendants’ intent to inflict an intentional tort or that defendants were substantially certain plaintiff would be injured. Therefore, we find that the trial court was correct in holding that defendants were entitled to judgment as a matter of law.
For the foregoing reasons, the judgment rendered by the trial court is affirmed. All costs of this appeal are taxed to plaintiff-appellant.
AFFIRMED.