**BAYARD v. TRADERS & GENERAL INS. CO. et al.**

Civ. A. No. 3177.

United States District Court
W. D. Louisiana, Lake Charles Division.
Aug. 18, 1951.

Minos H. Armentor, New Iberia, La., Patin & Patin, Lake Charles, La., for plaintiffs.

Davidson & Meaux, Lafayette, La., for defendant.

Helm & Simon, New Iberia, La., for intervenor.

DAWKINS, Chief Judge.

Plaintiffs' action is in tort for the death of the husband and father alleged to have been an independent contractor for the welding work on an oil well drilling rig, which defendant's insured, another independent contractor, was drilling on a lease of the Texas Company.

Defendant, Traders & General Insurance Company (called Traders) moved to dismiss for failure to state a claim for relief and, in the alternative, for a summary judgment in its favor. The motions to dismiss and for summary judgment are based upon substantially the same grounds, as follows: (1) the policy of liability insurance sued on was issued by defendant at its home office in Dallas, Texas, and delivered to Otis W. Dyer, Jr. (called insured) in the City of Houston, same state, and is therefore governed by the law of

Texas; (2) the said contract or policy of insurance contains a "no action" provision (the insurer shall not be sued until the claim is reduced to judgment, etc., against the insured), valid under Texas law, and for this reason, the law of Louisiana which purports to permit suing the insurer in the first instance has no application to this case; and (3) if construed to apply, would violate provisions of Section 1, Article 4 (full faith and credit), Section 10, Article 1 (impair the obligations of a contract), Section 1 of the Fourteenth Amendment (due process and equal protection of the laws) of the Federal Constitution, and Section 15 of Article 4 of the State Constitution.

A copy of the policy sued upon is before the court, and it appears conceded that it was issued and delivered in the State of Texas, as alleged by the defendant. The provision involved here is as follows:

"Action against Company—No action shall lie against the Company unless, as a condition precedent thereto, the Insured shall have fully complied with all of the terms of this policy, nor until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against the Insured after actual trial, or by written agreement of the Insured, the claimant, and the Company.

"Any person or his legal representative who has secured such judgment or written agreement shall thereafter be entitled to recover under the terms of this policy in the same manner and to the same extent as the Insured. Nothing contained in this policy shall give any person or organization any right to join the Company as a co-defendant in any action against the Insured to determine the Insured's liability.

"Bankruptcy or insolvency of the Insured or of the Insured's estate shall not relieve the Company of any of its obligations hereunder.

"Statutory Provisions—Any and all provisions of this policy which are in conflict with the statutes of the State *wherein this policy is issued are understood, declared and acknowledged by this Company to be amended to conform to such statutes.*" (Emphasis by the writer.)

Counsel have again raised and argued the questions which were decided in other cases in this court, later herein considered, including, first, the inapplicability of the state law to these cases, and, alternatively, the unconstitutionality of Act No. 55 of the Louisiana Legislature of 1930, as amended, LSA–RS 22:655, on the grounds stated, at least as to policies issued or delivered outside of Louisiana, and have asked that the court reverse its holdings in those cases. In the latest of these, the present judge had held that since the state statutes in their final form dealt only with the question of procedure, they might be changed from time to time as applying to policies written and delivered either within or outside the state, according to the meaning and intent of the Legislature, so as to apply even retroactively to actions pending and undecided when the changes were made.

## Opinion

In its origin, as we know, an action in tort arises solely from Article 2315 of the Louisiana Civil Code, which is but the revised version of a similar provision running back to the Code Napoleon. As between the injured party and the tortfeasor, the basis is a wrong committed against the former's person or property which has to be repaired. In the beginning, and for a long period of time, such actions grew out of the ordinary relations between people in a more or less simple form of life; but with the rapid changes within the past century to a more complicated, industrial and mechanical existence, especially with the invention of steam and other self-powered machines and vehicles, these action have multiplied manifold. The result has been that the courts, both of the states and nation, have had to deal with an ever-increasing volume of litigation. This, in the very nature of things, compelled the creation of some means of dealing with the condition. The logical course was to institute a system similar to those already in use for protecting owners against loss to their property by fire, theft, storms, etc. This required spreading the risks over a large number of owners of motor-driven machines so that the cost in the

form of premiums might be held to a minimum, and thereby avoiding the disaster to individuals of modest means resulting from large recoveries of damages. The policies, like other contracts, were based upon agreements between the insured and the insurer, the chief undertaking being one to indemnify the holders against liability for negligence or faults of themselves, their agents and employees. The person injured both then and now is a stranger to such agreements, and his rights still stem solely from Article 2315 of the Louisiana Civil Code. They are confined to those against the tortfeasor, until and unless through valid legislative power, they are extended or are imposed upon the insurer, whose obligation up to that stage is purely one of contractual indemnity.

With these fundamental and indisputable principles applying to the relations of the three sides to such disputes, we shall undertake an analysis of the law, both statutory and jurisprudential, of the state.

Until Act No. 253 of 1918, complainants or injured persons had to look to the tortfeasor for redress, and the latter, in turn, if he had a policy of indemnity, could require reimbursement from his insurer. This act made it impossible for the indemnitor to plead the bankruptcy or insolvency of its insured in defense of an action or judgment when obtained against the tortfeasor, by requiring the inclusion of a stipulation in the policy that "in case of such insolvency, or bankruptcy, an action may be maintained within the terms and limits of the policy by the injured person, or his or her heirs, against the [insurance] company." This necessarily had the effect of creating a right or cause of action for the tort, against a new and distinct third person.

Some twelve years later, the Legislature went much further and created a right of action, in the first instance, against the indemnitor, independent of that against the tortfeasor, thus permitting the injured party to abandon or ignore his claim against the latter, which has become the uniform practice. This cause of action was based solely upon the contractual relations between the insured and the insurer, for no

one would contend, it is believed, that the latter, which had nothing to do with the tortious act, could be declared a tortfeasor by mere legislative fiat.

The matter comes down at last to the proposition as to whether the Act of 1930 in reality created a substantive right or cause of action, or merely provided additional procedure for enforcing the statutory obligation of the actual tortfeasor under Article 2315. It must be remembered at all times that the only obligation voluntarily assumed by the indemnitor in the contract was the one to indemnify its principal against his own faults, and in which the injured person could have no part because his existence was unknown and he could have no interest therein until he had been injured. Even if the obligation of indemnity should be treated as a stipulation for his benefit under Articles 1890 and 1902, although unknown, here again the question still persists as to whether it was or was not the creation of a new cause of action in the sense hereafter discussed.

The state decisions will be taken up somewhat in the order of their dates, following the passage of Act No. 55 of 1930. (Note: All italics, unless otherwise noted, those of the writer.)

In Bougon v. Volunteers of America, 1934, 151 So. 797, 801, one of the earliest cases after the passage of this act, the Court of Appeals for the Parish of Orleans, one of the courts of last resort of the state (subject to review by the State Supreme Court at the latter's discretion), whose jurisdiction includes torts, with the late William W. Westerfield, an able judge, as its organ, in reviewing the history and purpose of Act No. 55 of 1930, said: "The foundation of the action of the insured is in contract, to which the injured party is a stranger, except in so far as the statutory provisions may be incorporated in the policy. The basis of the action by the injured party is negligence, or tort; that of the insured a contract of indemnity." After pointing out the changes wrought by the Act of 1930 over that of 1918, it was held:

"It will thus be seen that, whether intentional or otherwise, the act of 1930, far

from destroying or qualifying the effect of the decision in the Edwards Case [Edwards v. Fidelity & Casualty Co., 11 La. App. 176, 123 So. 162], enlarged upon it by making certain of the conclusion we had reached upon the subject of insolvency in giving it the status of a legislative enactment. Furthermore, the amending statute greatly increased the privilege of the injured person by conferring a right of direct action against the insurer without the necessity of establishing the bankruptcy of the insured and in advance of the securing of a judgment against it by joining the assured and the insurance company in the original action, or by suing the insured alone, or the insurer alone, and this the act declares may be done in the parish where the accident or injury occurred, or in the parish where the assured has his domicile.

"Considering both acts together, the act of 1918 and the act of 1930, it seems to us too plain for argument that it represents a determination upon the part of the Legislature to extend the rights of an injured party as against the insurer. In the beginning, an action could only be maintained in the event of the insolvency of the insured. Later this right of action was facilitated by a definition of insolvency and a conditional right of action conferred unrelated to the insolvency of the insured and capable of being exercised initially as against the insurer alone, or in conjunction with the insured as a solidary obligation."

Shortly thereafter, the State Court of Appeals for the Second Circuit, 1934, having equal jurisdiction, in Lowery v. Zorn, 157 So. 826, held, as shown by the twelfth syllabus, that Act No. 55 of 1930, giving a direct action against the insurer, was merely remedial and *did not give extraterritorial jurisdiction of non-resident insurers* in a policy of liability insurance issued and to have effect in another state, although covering accidents happening in Louisiana. A plea to the jurisdiction ratione personae by the insurer was therefore sustained.

However, in Stephenson v. List Laundry & Dry Cleaners, 1935, 182 La. 383, 162 So. 19, 21, the State Supreme Court (not in review, but by way of comment)

said that the Court of Appeals in Lowery v. Zorn, had fallen into error and, in the case then under review, held that by serving process upon the Secretary of State, designated as the insurer's agent therefor, as the price of doing business here, jurisdiction had been obtained of the insurer in the Stephenson case which had been sued jointly with the insured, although the policy contract was made and delivered outside Louisiana. The organ of the court in the last mentioned case cited and quoted from Hartford Accident & Indemnity Co. v. Delta & Pine Land Co., 292 U.S. 143, 54 S.Ct. 634, 78 L.Ed. 1178, the very case relied upon by the insurer, as supporting the ruling to the contrary there made. Unfortunately, the policy contract was not before the court at that time, and the case was remanded for further proceedings in which it could be produced. The then Chief Justice concurred only in the holding that the district court had jurisdiction, but stated that whether the plaintiff had a right of action against the insurer could be determined only after knowing the facts, including the terms of the policy; and that when these were ascertained, the case "may—and perhaps will" be governed by the ruling in Hartford Accident & Indemnity Co. v. Delta & Pine Land Co., supra.

The State Court of Appeals for the First Circuit, 1936, in Robbins v. Short, 165 So. 512, 514, held squarely that Act No. 55 of 1930 was remedial, not substantive, and therefore destroyed no contractual rights by permitting a direct action against the insurer alone, on a policy containing a "no action" clause even though perfectly valid in the state where the contract was made. The views of the court were stated as follows: "It then becomes of importance to determine whether that right under the Missouri contract is substantive or merely remedial and procedural. If the right is substantive and affects the primary and principal obligation of the insurance company by extending or enlarging its primary obligation under the policy then it follows that Act No. 55 of 1930 which permits the company to be joined in the suit against the insured could not be ap-

plied in this case so as to deprive the company of that substantial right of having the claim first liquidated against the insured. This principle runs through all of the cases touching on this point. A few of these cases will serve to illustrate the point." The court then analyzed the cases of Hartford Accident & Indemnity Co. v. Delta & Pine Land Co., supra, Home Insurance Co. v. Dick, 281 U.S. 397, 50 S.Ct. 338, 74 L.Ed. 926, and Aetna Life Insurance Co. v. Dunken, 266 U.S. 389, 45 S.Ct. 129, 69 L.Ed. 342, and pointed out in each what it thought were the substantive rights that would have been destroyed if the law of the forum, rather than that where the contract was made, had been applied. In Hartford, the state court said that "more than fifteen months had elapsed" (the period in which the notice of loss had to be given by the insured) before notice of defalcation was given to the insurer, and under the law of Tennessee, where the contract was made, the insurer had been "entirely relieved * * * of liability" by the expiration of the time within which suit could be brought; whereas, under the Mississippi statute, the suit was timely. It was asserted that the "right" thus "protected under the Tennessee contract * * * was a substantive right and one which the Mississippi statute could not defeat." It was also stated that in the Home Insurance case, a similar period of limitation had expired as to a contract, valid in Mississippi, where it was made, as against a longer period under the law of Texas, which the complainants invoked. For these reasons, the Court of Appeals of the First Circuit said the Texas law would have defeated a "right" which was of the "substance of the contract." In Aetna Life Insurance, also brought in Texas, attention was directed to the fact that the statute had imposed a penalty of 12% damages and attorney's fees in addition to the other obligations of the contract, valid under the laws of Tennessee, where made, "thus enlarging and extending the primary obligation." In disposing of Robbins v. Short, the court said:

"If the plaintiff here is permitted to avail herself of the provisions of Act No. 55 of 1930 and join the insurance company in the same suit with the insured and have her rights with respect to both adjudicated in the same action rather than by way of the circuitous route of first suing the insured and having her rights fixed and then suing the insurance company in the courts of this state, in what respect can it be said that the insurance company is deprived of any substantial right under the Missouri contract? The primary obligation of the insurance company could not be made more onerous by joining it in the same suit with the insured because Act No. 55 of 1930 provides that nothing in the act shall prevent the insurer from urging all defenses against the plaintiff as it could urge if the action was brought against it by the insured himself, nor does the act in any way attempt to enlarge or change the contract of insurance between the insured and the insurer. This act is purely remedial and does not affect any substantial rights under the contract of insurance. Hudson v. Georgia Casualty Company, D.C., 57 F.2d 757. Nor does the act impair the obligation of contracts. Rossville Commercial Alcohol Corporation v. Dennis Sheen Transfer Co., Inc., 18 La.App. 725, 138 So. 183; Ruiz v. Clancy et al., 182 La. 935, 162 So. 734.

"The learned trial judge was governed to a large extent in his conclusions by the case of Lowery v. Zorn (La.App.) 157 So. 826, 830, where under a state of facts very similar to the situation in this case, our brethren of the Second Circuit sustained an exception to the * * * misjoinder filed on the * * * insurance company. A careful reading of that decision shows that on the principal point involved in this case, that is the right to join the insurer in the action against the insured for damages, the court reached the same conclusion as we have reached in this case, as will be seen from the following excerpt taken from that opinion: 'Plaintiff also contends that Act No. 55 of 1930 affects only the remedy or procedure. In so far as in a proper case the act permits

the party injured to join the insurer, the statute is merely remedial.'"

In Ruiz v. Clancy, 182 La. 935, 162 So. 734, 735, the Supreme Court of the State, through the then Chief Justice O'Niell, with two justices dissenting, commenting as to the effect of a provision in a policy of liability insurance similar to the one involved here, said:

"The policy is said to be subject to the condition that no recovery against the company shall be had until the amount of the assured's obligation to pay shall have been finally determined, either by judgment against the assured after actual trial, or by written agreement of the assured and the claimant and the company. This stipulation, however, must yield to the provisions of Act No. 55, of 1930, which allows an injured person to bring suit against the liability insurer without making the insured a party to the suit. *In fact, one of the conditions stated in the policy is that any specific statutory provision in force in the state in which it is claimed that the insured is liable for any such loss as is covered by the policy shall supersede any provision in the policy inconsistent therewith.*

"The plaintiffs are claiming only the damages which they, the minor children of Mrs. Lochbaum, have suffered by the loss of the companionship and care and affection of their mother, and for the grief which the sudden death of their mother brought upon them. There is no claim for damages for sufferings endured by the mother, as to which a right of action might have survived in favor of her minor children, under the provisions of Act No. 223 of 1855, amending article 2315, which was then article 2294 of the Civil Code. The damages here claimed are only the damages for which a right of action was given by the amendment of article 2315 of the Civil Code, by Act No. 71 of 1884, to 'the survivors above mentioned,' in Act No. 223 of 1855, being originally only the minor children or widow of the deceased, or either of them, but now including other relations, by virtue of the amendments made by Act No. 120 of 1908 and Act No. 159 of 1918.

"Act No. 55 of 1930, amending and re-enacting the title and the first section of Act No. 253 of 1918, declares that it shall be illegal for any company to issue any policy 'against liability' unless it contains a provision to the effect that the insolvency or bankruptcy of the assured shall not release the company from the payment of damages for injury sustained or loss occasioned during the life of the policy; and the statute provides that the injured person or his heirs, at their option, shall have a right of direct action against the insurer, within the terms and limits of the policy, either in the parish where the accident or injury occurred or in the parish where the assured has his domicile, and that the action may be brought either against the insurer alone or against both the assured and the insurer, jointly and in solido. The statute provides further that nothing contained therein shall be construed to affect the provisions of the policy contract, if they are not in violation of the laws of the state; and the statute declares that its intent is that any action brought thereunder shall be subject to all of the lawful conditions of the policy contract, and be subject to the defenses which could be urged by the insurer to a direct action brought by the insured, meaning, of course, an action brought by the insured against the insurer to recover for a liability for which the insured was judicially compelled to pay for an injury sustained by a third party. The statute does not purport to interfere with the right of an insurance company to limit the so-called coverage, 'in any policy against liability,' to 'liability imposed upon him (the assured) by law,' as this policy provides. An insurance company therefore, may—as the company did in this instance—limit the coverage, or liability of the company, to the obligation to pay only such sums as the insured shall become obligated to pay by reason of the liability imposed upon him by law. The attorney for the insurance company contends that the statute would interfere with the freedom of parties to enter into contracts, and would be therefore unconstitutional, if it forbade insurers to limit their so-called coverage, in liability in-

surance policies, so as to cover only the legal liability of the insured. The statute does not purport to do that, by merely giving to an injured person a right of action against the insurer, and by compelling the insurer to respond—*within the limits of the policy*—to the obligation of the insured." (Emphasis by the writer.)

As shown by the emphasized portions of the above quotation, the policy contract expressly provided as "one of the conditions * * * that any specific statutory provision in force in the state in which it is claimed that the insured is liable for any such loss as is covered by the policy shall supersede any provision in the policy inconsistent therewith." Consequently, there could be no question of unconstitutionality based upon the Federal Constitution that an obligation of the contract had been destroyed.

In one of the most recent decisions, West v. Monroe Bakery, Inc., 1950, 217 La. 189, 46 So.2d 122, 123, the Louisiana Supreme Court, again construing Act No. 55 of 1930, in the light of facts there disclosed, had this to say: "An analysis of our jurisprudence considered by the Appellate Court in reaching its conclusion discloses that with two exceptions Act [No.] 55 of 1930 has been treated consistently as conferring *substantive rights* on third parties to contracts of public liability insurance, which become vested at the moment of the accident in which they are injured, *subject only to such defenses as the tort-feasor himself may legally interpose*. The facts in each case may be different, but save for Howard v. Rowan, La.App., 154 So. 382, and State Farm Mutual Automobile Insurance Company v. Grimmer, D.C., 47 F. Supp. 458, the result has been the same—the upholding of the statutorily granted right against the insurer regardless of a stipulation to the contrary between the insurer and the insured in the policy contract and regardless of dilatory conduct on the insured's part in giving notice." (Italics by the court.) Three of the seven justices dissented and insisted that the direct action provided by Act No. 55 of 1930 had to be "within the terms and limits of the policy"—in other words, that

it was the intention of this act that any action brought thereunder shall be "subject to all of the lawful conditions of the policy contract and the defenses which could be urged by the insurer to a direct action brought by the insured; provided the term and conditions of such policy contract are not in violation of the laws of this State."

In the dissenting opinion of Justice McCaleb, it was said, " * * * the majority fail to take in account that, while the 1930 amendment granted *greater rights* to the injured person by *according a right of direct action against the insurer,* it specifically restricted that right and made it subpect to all lawful conditions of the policy contract and to the *defenses which could be urged by the insurer in a direct action brought by the insured."* (Emphasis by the writer.)

Turning now to the decisions of the Federal Courts:

In New Amsterdam Casualty Co. v. Soileau, 1948, 167 F.2d 767, 769, 6 A.L.R. 2d 128, the Court of Appeals for the Fifth Circuit had this to say with respect to Act No. 55 of 1930: "The 1930 Act is not wholly procedural, for it confers also a substantive right upon the injured party in the direct action granted such party against the insurer. Nor is the act procedural in the sense that the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, are procedural; it deals neither with practice nor procedure in civil actions. If under it suit is instituted in a State court, State practice and procedure govern; if instituted in a federal court, federal practice and procedure become applicable." In a footnote to this case, it is said: "While the policies issued by the appellant contained a provision that no action shall lie against the company until the amount of the insured's obligation to pay shall have been finally determined, either by judgment against the insured after actual trial or by written agreement of the insured, the claimant, and the company, such stipulation is without legal effect, as Act No. 55 of 1930 was written into and became a part of the policies issued by the insurer in the State of Louisiana," thus disclosing

that the policy was issued and delivered in the State of Louisiana and was therefore governed by its laws.

In cases which both preceded and followed those by the state courts and that of Soileau, it has been held by both judges of this court that the provisions of Act No. 55 of 1930 giving the right of suing the insurer directly and alone were procedural or remedial, and hence were not amenable to charges of unconstitutionality under the Federal Constitution.

In Duncan v. Ashwander, D.C., 16 F. Supp. 829, by this court, the policy also provided as in Ruiz v. Clancy, supra, that any of its provisions in conflict with the laws where the suit was filed, would be disregarded and the local laws applied.

In Rogers v. American Employers' Ins. Co., D.C., 61 F.Supp. 142, this court, while recognizing that the question of whether the provisions of a statute are substantive or remedial is primarily one for it to decide where the Federal Constitution is involved, nevertheless held that a "no action" clause in a policy, valid under the law of the District of Columbia, where issued, did not prevent the suing of the insurer alone in this court under the provisions of Act No. 55 of 1930 on constitutional grounds. In support of this conclusion, its former decisions in Hudson v. Georgia Casualty Co., D.C., 57 F.2d 757, and Wells v. American Employers' Ins. Co., 5 Cir., 132 F.2d 316, 317, were cited. In the Hudson case, jurisdiction was sustained. There, the complainant had previously obtained a final judgment in the state court against the insured. It was alleged the insurer, although not a party of record, had appeared and directed the defense, and the contention in this court was that it could not be cited through the Secretary of State, because the accident happened in Arkansas; and alternatively, it would have to be sued at the official domicile of that officer in the Eastern District of Louisiana. In Wells, two suits had been separately filed in the state court of Texas against the insurance company, growing out of an accident that happened in Louisiana, and were removed to the federal court in the former state because of diversity, where they were consolidated for trial. The federal trial court sustained a motion to dismiss for want of jurisdiction, and this was affirmed by the Court of Appeals for this Circuit, with one of the judges dissenting. Judge Holmes, as the author of the main opinion, said that although, under the law of Louisiana, it was permissible to sue the insurer alone in the first instance, this was not the law of Texas, where the liability of the insurer to the person injured rests "solely upon a contract of insurance" and the plaintiff must bring his action within the terms of the policy before he may recover, adding:

"So far as that law is substantive we are controlled by the statutes and decisions of Louisiana; so far as it is procedural we are guided by the law of Texas, since there is nothing to the contrary in the federal statutes or the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

"The court of the forum determines according to its own conflict–of–laws rule whether the question is one of substance or procedure, and, in so doing, will examine the entire transaction before it. This includes the statute of Louisiana creating the right against the insurer and its interpretation by the courts of that state. So guided and controlled, we hold that the right to sue the insurer directly is procedural, and that the law of the forum governs."

In his dissenting opinion, Circuit Judge McCord called attention to the fact that the "contract of insurance was issued in Louisiana, covering a resident of Louisiana, and the accident giving rise to these actions occurred in Louisiana. * * * The effect of the statutory provision is that 'the policy has become one of liability, rather than one of indemnity, and an injured claimant has been given the right to proceed directly against the insurer and recover from it whatever benefits the provisions, terms, and conditions of the policy contract afford him'", citing Graham v. American Employers' Ins. Co., La.App., 171 So. 471; Ruiz v. Clancy, supra, and Rambin v. Southern Sales Company, La. App., 145 So. 46. Judge McCord also

pointed out that the "right to proceed directly against an insurance company is not against the public policy of Texas, and I think we have the right to determine for ourselves whether the right given by the Louisiana statute is a substantive one, enforceable in the Federal Court sitting in Texas. Restatement, Conflict of Laws, p. 486. I am of opinion that on the facts of this case the governing principles of conflict of laws require that we determine the right to be a substantive one." The Graham case had held the provisions of Act No. 55 of 1930 permitting the suing of the insurer alone, at the option of the claimant, would prevail over a "no action" clause in the policy. It had been issued in Louisiana to protect a dealer against liability occurring out of the use of cars held for sale to the public. Recovery was denied because the automobile at the time of the accident was in the possession of and being driven by a prospective purchaser over whom the insured had no control, and as to which the policy did not apply.

In the trial court, Judge Atwell in the Wells case, (Wells v. Irwin), D.C., 43 F. Supp. 212, 213, had held that under Texas law the insurer could not even be joined with the insured where the policy required the prior liquidation of the claim against the latter, and took occasion to say that the courts of Texas, including the federal courts sitting there, would take "notice that juries are more apt to return a verdict for an injured party, and for a larger amount, if they know that the loss is ultimately to fall on an insurance company. That is a well settled and a well observed rule in Texas," citing numerous state decisions, as well as Coble v. Phillips Petroleum Co., D.C., 30 F.Supp. 39. He also referred to the fact that the Louisiana statute had been considered by the Supreme Court of Mississippi, in the case of McArthur v. Maryland Casualty Co., 184 Miss. 663, 186 So. 305, 120 A.L.R. 846, which had held itself not bound thereby.

In Bouis v. Ætna Casualty and Surety Company, D.C. 1950, 91 F.Supp. 954, the writer again had occasion to consider the question as to whether the Louisiana Act

constituted substantive or procedural law and held that it involved procedure only.

On the other hand, in the Eastern District of Louisiana, two of the trial judges have held to the contrary, the first case being that of Wheat v. White, D.C. 1941, 38 F.Supp. 796, 797, by the late Judge Caillouet, and the other Belanger v. Great American Indemnity Co., 89 F.Supp. 736, by Judge Wright. In the first of these two cases, the liability insurance policy had been issued in Mississippi to a resident and citizen of that state, "not engaged in any business in Louisiana, but making occasional trips to New Orleans or Baton Rouge." The suit was against the insurer and two other defendants, one of which was the Consolidated Underwriters, a Missouri corporation qualified to do business in Mississippi and Louisiana. The policy contained the "no action" clause, valid under the laws of Mississippi, where issued, and covered an automobile kept and used in that state for personal purposes. In dismissing the suit as to the insurer, the court said:

"The contract contained in the policy of insurance here at issue is a Mississippi contract, and the law of that state entered into it and became a part of it; the provisions of the Louisiana statute can not now be engrafted into such contract, so as to make it, substantively, a different and more onerous one than the contract entered into between Consolidated Underwriters and Walter H. White. Ætna Life Ins. Co. v. Dunken, 1924, 266 U.S. 389, 45 S.Ct. 129, 69 L.Ed. 342; Home Ins. Co. v. Dick et al., 1930, 281 U.S. 397, 50 S.Ct. 338, at 341, 74 L.Ed. 926, 74 A.L.R. 701.

"The general rule is that a contract valid under the governing law of a state is valid everywhere, unless such contract violates the fixed public policy of the state in which an action is brought on the contract. The Mississippi contract of insurance, here involved, is valid in Louisiana and must be enforced as written, unless it violates the fixed public policy of Louisiana, as the same is reflected by the Constitution of the State, its statutes and its jurisprudence, or either.

"The contract violates no fixed public policy of the State and this Court can not, therefore, refuse to give full effect to its provisions, one of which justifies the contention of Consolidated Underwriters that no action lies against it, in view of the fact that, concededly, 'the amount of' defendant White's 'obligation to pay' the claimant, Julius B. Wheat, has not been finally determined, either by final judgment against said assured or by written agreement of himself, the plaintiff and insurer.

" 'A contract is not necessarily contrary to the public policy of a state merely because it could not validly have been made there; nor is it one to which comity will not be extended merely because the making of such contracts in the place of the forum is prohibited. To have that vitiating effect the transaction must be considered *inherently vicious, wicked, or immoral, or so pernicious or detestable as to shock the prevailing moral sense, or be contrary to public good.*' (Italics supplied.) 17 C.J.S., Contracts, § 16, p. 345, at pp. 349, 350."

In Belanger, while the court's decision was based upon the proposition that, at the time, the law of Louisiana had been amended so as to apply only to policies "issued or delivered in this State," [89 F.Supp. 737] it went on to discuss the constitutional questions of impairment of contracts, due process, full faith, etc., and concluded that Act No. 55 of 1930 could not control policy contracts made outside of Louisiana and was invalid under all of these provisions. The Court of Appeals for this Circuit pretermitted the constitutional issues and affirmed the Belanger case on the ground that at the time it was decided, the Louisiana statute did not apply to insurance policies "issued and delivered" outside of the state.

It thus appears that there has been much confusion and disagreement both among the state courts of Louisiana and in the decisions of the federal courts of this state, some holding that Act No. 55 of 1930 had created a substantive right which necessarily changed and enlarged the obligations of the insurer where the policy contract had been made in other states whose laws permitted the "no action" stipulation; while in others, it was said that the provision for direct action against the insurer alone was merely procedural or remedial.

After further careful consideration and deliberation, this judge has reached the conclusion that it is his duty to determine anew the issue as to the nature and effect of the provision of the state law, according to the federal jurisprudence and his own judgment, as to what constitutes substantive, as against procedural, law, rather than attempt to follow any particular rule of the state courts. This certainly is true in so far as the meaning and effect of the state statute is concerned, when tested by federal constitutional restrictions.

In the desire to facilitate disposition by the courts of the great volume of litigation resulting from the appalling loss of life, limb and property both in industrial activities and upon the highways, it would appear that some of us have lost sight of the original purpose of indemnity insurance, which was to protect the operator of a dangerous machine or a hazardous business against his own negligence or want of care, and that of his agents and employees. The system, as conceived, was not to provide protection for the victim of such negligence. Even now, if one has the misfortune to be injured by a jalopy, with which the highways have been infested, especially during the depression and the late war, upon which there is no indemnity insurance, and the owner or operator is without means, the victim has to bear the loss. This has caused many to clamor for compulsory insurance upon all death-dealing vehicles, such as automobiles, trucks, etc., but so far, most legislators have not had the intestinal fortitude to sponsor such measures, no doubt arguing that the poor man who can't pay for liability insurance should not be deprived of the use of the highways with whatever type of vehicle he can acquire. Hence, the cost of liability protection has increased by leaps and bounds to where it has become almost prohibitive for one of small means, if he is to be protected fully against verdicts of the sizes rendered by juries in some instances. Following the usual course of human weakness, lawmakers have sought

to deal with the situation by increasing the burdens upon the insurers in a manner which, while ultimately touching every owner of a motor-propelled vehicle, is not clearly understood until one is confronted with a damage suit. The increase in premiums has been steady, but gradual, and hence little noticed by the average individual.

In the beginning and even now, there could be and there can be no valid reason why the insurer and the insured should not make, if they desired, such stipulations for holding down the cost as they saw fit, so long as these provisions were not immoral or in conflict with any positive law or well recognized public policy of the state. One of the most natural things, it would seem, is the holding of recoveries within reasonable bounds. Recognizing the frailties of human nature and the disposition of many, who are called from ordinary walks of life, to sit in judgment on such matters, to allow larger amounts where it is believed "a rich insurance company" will have to pay than where the burden would fall upon an individual, what could be more natural than to require the claimant to first settle both the liability and the amount of his recovery with the man responsible for the injury, in a proceeding where they stand on comparatively equal footings? Of course, the main answer would be delay. Yet, once this was done, the insurer, with notice, could be restricted from repeating decided issues. In many of the states, this is required, and in some it is the settled law that the court commits reversible error if it allows the jury to know that the accident is covered by insurance. The reasons for this are perfectly obvious. However, Louisiana has gone as far, and perhaps further, than any other state in its attempt to obscure the tort-feasor himself and to give to the injured person free range in the combat with the insurance company, with the consequences which such a situation invariably entails. Therefore, instead of the policy being, as it started out to be, one of indemnity to protect the insured, it has, by this legislation, been converted into one of liability to protect third persons in no wise parties thereto under a purely voluntary agreement between the insured and the insurer. Both the judges of this district, as stated above, have held that actions of this kind could be brought in the federal court under the statute in question, regardless of where the indemnity contract was made, because they concluded procedure alone was involved. But is this true? In the light of what has been said and the decisions heretofore analyzed, did not this legislation create a new cause or right of action which had not theretofore existed, based upon an entirely different theory and principle from what was originally intended? The tort action of the Code is the basis for all liability of this kind, and it makes responsible only the person who committed the wrong. Act No. 55 of 1930 has in effect attempted to add to Article 2315 another person in no wise at fault. simply because he has agreed for a premium to indemnify the tort-feasor within limits against his own wrongs, after they have been proven.

It would appear to be stretching the law a long way to say that by its *ipse dixit,* the Legislature could make such a fundamental change in the relationships and responsibilities of the parties flowing from a lawful agreement made outside the state.

The conditions have reached the point where it is believed in the interest of justice, they should be dealt with frankly.

This statute has made it possible to flood the federal courts with these damage suits, based upon diversity of citizenship, largely because most of the insurance companies are domiciled in other states, by simply omitting from the action the insured. Anyone at all familiar with the underlying purpose of the federal constitutional and statutory provisions giving jurisdiction to federal courts in a controversy between citizens of different states, knows that what is being done is a reversal or perversion of these laws which were intended to insure fair treatment of non-residents when pitted against local residents.

For all of the reasons above recited, I am finally convinced that Act No. 55 of 1930 made a fundamental and substantial change in the right of action under these indemnity policies, or, as they are

now called, liability contracts, not confined to procedure or remedy. I am not oblivious to the duties of the states to provide greater protection and safety upon their highways, in view of the appalling and increasing slaughter and maiming of human beings, to say nothing of the destruction of property. But do such laws as are here under consideration have any tendency to do this? Or does it not rather encourage more carelessness where the operator of a machine knows he can, for a price, shift all responsibilities to an insurance company, the expense of which is contributed to in ever-increasing measure by every owner and operator of a dangerous machine, or a motor vehicle upon the roads of the country? Does it add anything toward a solution of the perplexing problem which we all recognize? In so far as contracts made in the state are concerned, the law-making power can impose any reasonable condition as a price for doing business here which is not prohibited either by the Federal or State Constitutions, so long as the measure applies equally to its own citizens; but as to contracts lawfully made and to be applied in other states, the Federal Constitution, in the provisions relied on by the insurer here, prevents the exercise of arbitrary power not founded upon some legitimate principle of state public policy.

■■ The policy contract in the present case, made and delivered in Texas, as stated, did not obligate the indemnitor or insurer to pay even the insured merely on proof of damage or injury to someone else caused by his fault, but it was conditioned upon any such claimed liability first being liquidated and determined between the insured and any third person who might assert it. If this condition was binding upon the insured and no reason can be seen why it was not, then all the more reason why it should be as to third persons whose rights are based entirely upon the issue of whether the insured was guilty of a wrong which caused his injury. In the case of Hartford Accident & Indemnity Co. v. Detla & Pine Land Co., supra, the contract or bond was valid in Tennessee, where made and intended to

apply, but its nature and terms were such that it covered the risk in any other state if the business of the obligee, as actually happened, was carried on there. The promise of the bonding company ripened into an obligation in Mississippi through the dishonesty of the employee. In our case the policy contract was made and delivered in Texas, but covered operations also in Louisiana, in so far as the drilling rigs in the present action were concerned. The accident happened in Louisiana. It is believed that the reasoning of Mr. Justice Roberts in the Hartford case has equal application here, and the following is quoted therefrom:

"The Mississippi statutes, so construed, deprive the appellant of due process of law. A state may limit or prohibit the making of certain contracts within its own territory (Hooper v. California, 155 U.S. 648, 15 S.Ct. 207, 39 L.Ed. 297; Orient Insurance Co. v. Daggs, 172 U.S. 557, 565, 566, 19 S.Ct. 281, 43 L.Ed. 552; New York Life Ins. Co. v. Cravens, 178 U.S. 389, 398–399, 20 S.Ct. 962, 44 L.Ed. 1116); *but it cannot extend the effect of its laws beyond its borders so as to destroy or impair the right of citizens of other states to make a contract not operative within its jurisdiction, and lawful where made.* 34 S.Ct. 879, 58 L.Ed. 1259; (New York Life Ins. Co. v. Head, 234 U.S. 149; Ætna Life Ins. Co. v. Dunken, 266 U.S. 389, 399, 45 S.Ct. 129, 69 L.Ed. 342.). Nor may it in an action based upon such a contract enlarge the obligations of the parties to accord with every local statutory policy solely upon the ground that one of the parties is its own citizen. Home Insurance Co. v. Dick, 281 U.S. 397, 407–408, 50 S.Ct. 338, 74 L.Ed. 926.

"It is urged, however, that in this case the interest insured was in Mississippi when the obligation to indemnify the appellee matured, and it was appellant's duty to make payment there; and these facts justify the state in enlarging the appellant's obligation beyond that stipulated in the bond, to accord with local public policy. The liability was for the payment of money only, and was conditioned upon three events, loss under the policy, notice to the

appellant at its home office, and presentation of claim within fifteen months of the termination of the suretyship. All of these conditions were of substantial importance, all were lawful in Tennessee, and all go to the obligation of the contract. It is true the bond contemplated that the employee whose faithfulness was guaranteed might be in any state. He was in fact in Mississippi at the date of loss, as were both obligor and obligee. The contract being a Tennessee contract and lawful in that state, could Mississippi, without deprivation of due process, enlarge the appellant's obligations by reason of the state's alleged interest in the transaction? We think not. Conceding that ordinarily a state may prohibit performance within its borders even of a contract validly made elsewhere, if the performance would violate its laws (Home Insurance Co. v. Dick, supra, page 408 of 281 U.S., 50 S.Ct. 338, 74 L.Ed. 926), *it may not, on grounds of policy, ignore a right which has lawfully vested elsewhere, if, as here, the interest of the forum has but slight connection with the substance of the · contract obligations. Here performance at most involved only the casual payment of money in Mississippi. In such a case the question ought to be regarded as a domestic one to be settled by the law of the state where the contract was made. A legislative policy which attempts to draw to the state of the forum control over the obligations of contracts elsewhere validly consummated and to convert them for all purposes into contracts of the forum, regardless of the relative importance of the interests of the forum as contrasted with those created at the place of the contract, conflicts with the guaranties of the Fourteenth Amendment. Ætna Life Ins. Co. v. Dunken, supra;* Home Insurance Co. v. Dick, supra, *Cases may occur in which enforcement of a contract as made outside a state may be so repugnant to its vital interests as to justify enforcement in a different manner.* Compare Bond v. Hume, 243 U.S. 15, 22, 37 S.Ct. 366, 61 L.Ed. 565. *But clearly this is not such a case."* [292 U.S. 143, 54 S.Ct. 636.]

The method used by the State of Louisiana in attempting to eliminate the "no ac-

tion" clause from contracts voluntarily made in other states, is somewhat different from that in the Mississippi case, in that in the latter, the statute, in so many words, declared any agreement made contrary to its provisions would be unlawful; whereas, in the present case, the Louisiana Act seeks the same result by indirection, in that it permits the claimant at his option to ignore the condition and requirement of the policy that any claim as to liability and the amount should first be settled between the insured and the claimant.

 For all the reasons stated, since the contract was made, delivered and primarily intended to apply in Texas, it cannot be sued on against the insurer alone in this court.

Proper decree should be presented.